## TABLE OF CONTENTS

I. BACKGROUND .......... 2

A. Act 11 .......... 2

B. Grassroot .......... 4

II. LEGAL STANDARD .......... 5

III. ARGUMENT .......... 6

A. Grassroot lacks standing to challenge Act 11 .......... 6

1. Grassroot must demonstrate that it intends to engage in conduct proscribed by Act 11 .......... 6

2. Grassroot has not shown an intent to engage in conduct covered by Act 11 .......... 8

3. Grassroot cannot show that injury is imminent when its claimed harm is contingent on the unpredictable qualification of specific ballot measures in future elections .......... 15

4. Grassroot cannot base its standing on harm to the Grassroot Action Center .......... 20

B. Grassroot fails to state a claim under the First Amendment .......... 22

IV. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

## Cases

*4805 Convoy, Inc. v. City of San Diego*,
183 F.3d 1108 (9th Cir. 1999) ....................15

*ACLU v. Heller*,
378 F.3d 979 (9th Cir. 2004) ....................19

*Am. Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) .................... 7, 8, 15

*Ariz. All. for Retired Ams. v. Mayes*,
No. 22-16490, 2026 WL 2277101 (9th Cir. Aug. 7, 2026) (en banc)................1, 7

*Ariz. Right to Life Political Action Comm. v. Bayless*,
320 F.3d 1002 (9th Cir. 2003) ....................7

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989)....................12

*Ashcroft v. Iqbal*,
556 U.S. 662, (2009)....................6

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979)....................8

*Baker v. Hawai'i*,
977 F. Supp. 2d 1026 (D. Haw. 2013)....................6

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014).................... 24, 25

*Cal. Pro-Life Council, Inc. v. Getman*,
328 F.3d 1088 (9th Cir. 2003) ....................7, 19

*Canatella v. California*,
304 F.3d 843 (9th Cir. 2002) ....................15

*Citizens United v. FEC*,
558 U.S. 310 (2010).................... 21, 22, 23, 24

*City & Cty. of Honolulu v. State*,
431 P.3d 1228 (Haw. 2018) ....................16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).................... 19, 21

*Clark v. City of Lakewood*,
259 F.3d 996 (9th Cir. 2001) ....................15

*Ctr. for Individual Freedom, Inc. v. Tennant*,
706 F.3d 270 (4th Cir. 2013) ....................24

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....................1, 19

*FEC v. Ted Cruz for Senate*,
596 U.S. 289 (2022)....................7

*Flint v. Dennison*,
488 F.3d 816 (9th Cir. 2007) ....................25

*G.B. ex rel. G.P. v. EPA*,
172 F.4th 1042 (9th Cir. 2026) ....................6

*Griffin v. Lockhart*,
935 F.2d 926 (8th Cir. 1991) ....................24

*Interpipe Contracting, Inc. v. Becerra*,
898 F.3d 879 (9th Cir. 2018) ....................21

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................10

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ....................10

*Kowalski v. Tesmer*,
543 U.S. 125 (2004)....................20

*Libertarian Party of L.A. Cty. v. Bowen*,
709 F.3d 867 (9th Cir. 2013) ....................7

*Lopez v. Candaele*,
630 F.3d 775 (9th Cir. 2010) ........................................................................ passim

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................................................................ 6, 16, 19

*Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*,
122 F.4th 825 (9th Cir. 2024) ...........................................................................7, 15

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ...............................................................................5

*Seattle Pac. Univ. v. Ferguson*,
104 F.4th 50 (9th Cir. 2024) ...........................................................................8, 12

*Spokeo, Inc. v. Robbins*,
578 U.S. 330 (2016)...............................................................................................6

*Stockton v. Brown*,
152 F.4th 1124 (9th Cir. 2025) .........................................................................8, 14

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) (en banc) ..........................................................7, 16

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022) ........................................................................ 20, 21

*Trs. of Dartmouth Coll. v. Woodward*,
17 U.S. (4 Wheat.) 518 (1819)............................................................................23

*Twitter, Inc. v. Paxton*,
56 F.4th 1170 (9th Cir. 2022) ...............................................................................7

*United States v. Dykema*,
666 F.2d 1096 (7th Cir. 1981) .............................................................................11

*United States v. Hawai'i*,
830 F. Supp. 3d 1028 (D. Haw. 2026)............................................................ 12, 19

*United States v. Williams*,
553 U.S. 285 (2008)..............................................................................................24

*Viernes v. DNF Assocs., LLC*,
582 F. Supp. 3d 738 (D. Haw. 2022)....................5

*Warth v. Seldin*,
422 U.S. 490 (1975)....................20

*Waters-Pierce Oil Co. v. Texas*,
177 U.S. 28 (1900)....................23

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)....................16

*Yamada v. Snipes*,
786 F.3d 1182 (9th Cir. 2015).................... 24, 25

**Statutes**

26 U.S.C. § 501(c)(3)....................11

Haw. Rev. Stat. § 11-302....................25

Haw. Rev. Stat. § 414D-2....................2

Haw. Rev. Stat. § 414D-51....................2

Haw. Rev. Stat. § 414D-52....................2

**Rules**

FRCP 12(b)(1)....................5

FRCP 12(b)(6)....................5

**Legislative History**

Act 11, Session Laws of Hawai‘i 2026.................... passim

*HB2147 HD2*, 33rd Leg., Reg. Sess. (2026), available at
https://www.capitol.hawaii.gov/session/measure_indiv.aspx?billtype=
HB&billnumber=2147&year=2026....................17

*SB 2464*, 33rd Leg., Reg. Sess. (2026), available at https://www.capitol.
hawaii.gov/session/measure_indiv.aspx?billtype=SB&billnumber=246
4&year=2026....................17

**Other Authorities**

Ben Angarone, *Empty Homes Tax: O'ahu Voters Blocked From Weighing In*, Honolulu Civil Beat (July 21, 2026), https://www.civilbeat.org/2026/07/empty-homes-tax-oahu-voters-blocked-from-weighing-in/ ....................17

Honolulu Charter Comm'n, *Final Ballot Question & Justification Language*, Honolulu City Council (July 20, 2026), https://www4.honolulu.gov/docushare/ dsweb/Get/Document-359827/Final%20Approved%20Ballot%20Questions%20and%20Justification%20Language%20(072026).pdf ....................17

*Oxford English Dictionary* (2d ed. 1989) ....................24

*Results*, State of Haw. Office of Elections, https://elections.hawaii.gov/election-results/ ....................18

## MEMORANDUM IN SUPPORT OF MOTION

This case concerns Act 11, a recently enacted but not yet operative law relating to corporations' powers to spend money in elections. Plaintiff Grassroot Institute of Hawaii (Grassroot) is a Hawai'i nonprofit corporation that opposes Act 11, believing it to violate the First Amendment. But in a federal court of limited jurisdiction, a party "does not have standing to challenge a government regulation simply because [it] believes that the government is acting illegally." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Instead, the party must show that injury to the party itself has "already occurred" or is "likely to occur soon." *Id.*

Grassroot cannot make this showing. To succeed on any of its pre-enforcement First Amendment claims, it must demonstrate that it intends to engage in conduct that Act 11 would proscribe. *Ariz. All. for Retired Ams. v. Mayes*, No. 22-16490, 2026 WL 2277101, at *9 (9th Cir. Aug. 7, 2026) (en banc). But Grassroot's allegations show the opposite: its past conduct has been, and its future alleged conduct would be, within Act 11's boundaries. And even if that were not so, Grassroot cannot allege when (if ever) it will engage in the conduct it thinks Act 11 disallows because its participation in elections is conditional on certain measures appearing on the ballot and, as a result, is highly speculative.

Grassroot's claims also fail on the merits. As Defendants' forthcoming brief in opposition to Plaintiff's Motion for Preliminary Injunction will fully explain, Act

11 does not implicate the First Amendment because it does no more than define the lawful powers and objectives of corporations rather than limiting their rights. For lack of standing or for failure to make a claim, Grassroot's Complaint, ECF No. 1, should be dismissed.

## I. BACKGROUND

### A. Act 11

Like every state, Hawai‘i has enacted laws that authorize the formation of corporate entities. Of relevance to this case is the Hawaii Nonprofit Corporations Act, which was enacted in 2001 and is codified as Chapter 414D of the Hawaii Revised Statutes. The Nonprofit Corporations Act specifies the powers a nonprofit corporation has and the activities in which it can engage. Haw. Rev. Stat. §§ 414D-51, 414D-52. When the Hawai‘i Legislature repealed a prior version of the Nonprofit Corporations Act and added Chapter 414D to the statute books, it expressly reserved its "power to amend or repeal all or part of this chapter at any time[.]" *Id.* § 414D-2.

In 2026, the Legislature exercised its authority to redefine the purposes and powers of corporate entities by passing Act 11. The Act takes effect on July 1, 2027. Act 11, § 27.[1] As relevant to this case, when Act 11 takes effect, it will amend the "Purposes" section of the Nonprofit Corporations Act to provide that Hawai‘i nonprofit corporations "ha[ve] the purpose of engaging in any lawful activity, not

[1] The full text of the enacted version of Act 11 is available at ECF No. 15-6.

including election activity or ballot-issue activity[.]" *Id.*, § 9. It will similarly amend the "General powers" section to provide that Hawaiʻi nonprofit corporations, other than candidate and noncandidate committees, do "not have the power to expend moneys on or participate in any election activity or ballot-issue activity." *Id.*, § 10.

Act 11 defines "ballot-issue activity" as "paying, contributing, or expending money or anything of value to support or oppose a constitutional amendment, county charter amendment, or other ballot question after it has been formally certified or submitted to the electors of the State or any county." *Id.*, § 8. "Election activity" is defined as "paying, contributing, or expending money or anything of value to support or oppose a candidate, political committee, or political party." *Id.* Excluded from both definitions is the "distribut[ion]" of "any bona fide news story, commentary or editorial" through "the facilities of a broadcasting station or of any print, online, or digital newspaper, magazine, blog, or other periodical publication" not "owned or controlled by a candidate, political committee, or political party." *Id.*

To reinforce these limitations, the amended Nonprofit Corporations Act will also specify that Hawaiʻi nonprofit corporations "have artificial-person powers," which are defined as excluding "the power to directly or indirectly engage in election activity or ballot-issue activity"; that any corporate articles, bylaws, or documents purporting to grant a nonprofit corporation "any power to directly or indirectly engage in election activity or ballot-issue activity" are void; and that "[a]ny act

undertaken by a [nonprofit] corporation that constitutes an election activity or ballot-issue activity" is "ultra vires and void." *Id.*, §§ 6, 10. Act 11 will authorize the Attorney General and the Director of Commerce and Consumer Affairs to bring actions and impose specified penalties for ultra vires acts. *Id.*, § 23.

Although not directly at issue in this case, Act 11 will make similar changes to the powers of other corporate entities, including business corporations, *id.*, §§ 4–6, professional corporations, *id.*, § 12, limited liability partnerships, *id.*, § 16, and limited liability companies, *id.*, §§ 19–20. The Act also contains provisions that will apply to foreign corporations operating in Hawaiʻi. *See, e.g.*, *id.*, § 10.

**B. Grassroot**

Grassroot is a Hawaiʻi nonprofit corporation founded in 2001. Compl., ECF No. 1, ¶¶ 3, 6. It is not a candidate or noncandidate committee. *Id.* ¶ 6. It is exempt from federal taxation under 26 U.S.C. § 501(c)(3). *Id.* ¶ 3.

Grassroot describes itself as primarily serving an educational role, saying that its purpose is "to educate about the principles of individual liberty, economic freedom, and limited, accountable government." *Id.* ¶ 6. To accomplish this purpose, Grassroot prepares and publishes white papers, policy briefs, and commentaries and organizes events, conferences, and seminars on "key public issues[.]" *Id.* ¶ 13. It discusses its research and topics of public interest at the events it hosts, and it communicates its views through "social media, mailings, and other means[.]" *Id.* ¶

14–16. "[H]istorically[,]" Grassroot has also "opined on ballot issues that affect key areas of its mission," including taxes and public transit. *Id.* ¶¶ 8–12. However, it does not support, oppose, or donate to individual political candidates or to political parties. *Id.* ¶¶ 7, 16.

Grassroot has several legal theories about how Act 11 violates the First Amendment. *Id.* ¶¶ 51–97. Central to all of Grassroot's theories, though, is its claim that Grassroot itself will be liable for penalties under Act 11 once the Act goes into effect. *See id.* ¶ 44.

## II. LEGAL STANDARD

FRCP 12(b)(1) "authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction, including claims for which a plaintiff lacks standing." *Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 745 (D. Haw. 2022). "A 'facial' challenge accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* at 745–46 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). A district court resolves a facial challenge by "[a]ccepting the plaintiff's allegations as true[,]" "drawing all reasonable inferences in the plaintiff's favor," and "determin[ing] whether the allegations are sufficient to invoke the court's jurisdiction." *Id.* at 746.

FRCP 12(b)(6) "permits a motion to dismiss for 'failure to state a claim upon which relief can be granted[.]'" *Baker v. Hawai'i*, 977 F. Supp. 2d 1026, 1030 (D.

Haw. 2013). "[T]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. ARGUMENT

### A. Grassroot lacks standing to challenge Act 11.

#### 1. Grassroot must demonstrate that it intends to engage in conduct proscribed by Act 11.

"The 'irreducible constitutional minimum of standing' requires a plaintiff to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the challenged conduct, and (3) a likelihood that a favorable decision will redress the plaintiff's injury." *G.B. ex rel. G.P. v. EPA*, 172 F.4th 1042, 1054 (9th Cir. 2026) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An injury in fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016)). The injury requirement "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy and screens out those who have only a general, legal, moral, ideological, or policy objection to a particular government action." *Id.* (cleaned up).

Pre-enforcement challenges based on the First Amendment "present unique standing considerations[.]" *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006

(9th Cir. 2003)). "This is because 'a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.'" *Am. Encore v. Fontes*, 152 F.4th 1097, 1113 (9th Cir. 2025) (quoting *Libertarian Party of L.A. Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013)).[2]

To establish standing in these cases, a plaintiff must show "[1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder." *Id.* at 1114 (quoting *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024)).[3] "[S]elf-censorship alone is insufficient to show injury." *Id.* (quoting *Lopez*, 630 F.3d at 792). So is "the mere existence of a proscriptive statute[.]" *Id.* (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)). In other words, a plaintiff cannot bring a First Amendment claim "by nakedly asserting that [its] speech was chilled" by a challenged law, *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1174 (9th Cir. 2022) (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003)), because the Court's inquiry "does not turn on the strength of

---

[2] Defendants do not concede that Act 11 implicates the First Amendment. *See infra* Section III.B. They recognize, however, that "[f]or standing purposes," the Court must "accept as valid the merits of [Grassroot's] legal claims." *Am. Encore*, 152 F.4th at 1110 (quoting *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 298 (2022)).

[3] The Ninth Circuit has sometimes used a different formulation of the test, but has more recently clarified that this is the correct one. *Ariz. All. for Retired Ams.*, 2026 WL 2277101, at *9.

plaintiffs' concerns about a law, but rather on the credibility of the threat that the challenged law will be enforced against them[,]" *Lopez*, 630 F.3d at 792 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298–99 (1979)).

To establish a credible risk of enforcement, a plaintiff "must . . . 'giv[e] details about their future speech such as "when, to whom, where, or under what circumstances"' they intend to violate the law in question." *Stockton v. Brown*, 152 F.4th 1124, 1144 (9th Cir. 2025) (quoting *Lopez*, 630 F.3d at 787), *cert. denied*, No. 25-606, 2026 WL 1203416 (U.S. May 4, 2026). Information about "past expressive conduct" can indicate the type of conduct in which a plaintiff intends to engage in the future. *Am. Encore*, 152 F.4th at 1114; *see Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59 (9th Cir. 2024) ("When . . . a plaintiff has previously engaged in conduct that would violate the challenged law, we have relaxed the requisite level of detail.").

**2. Grassroot has not shown an intent to engage in conduct covered by Act 11.**

Grassroot's allegations fail the standing test. Based on Grassroot's descriptions of its own past behavior and future intent, the organization has failed to establish that it intends to engage in any conduct that is even "arguably . . . proscribed by" Act 11. *Am. Encore*, 152 F.4th at 1118.

Begin with "ballot-issue activity." Grassroot says that it will "continue engaging in ballot-issue activity" and is likely to face penalties under Act 11 as a result. Compl. ¶ 44. But Grassroot's allegations, even if accepted as true, do not

establish that Grassroot has ever engaged in "ballot-issue activity" as that term is defined by Act 11. Act 11 defines "ballot-issue activity" to include only actions taken "*after*" a ballot question "has been formally certified or submitted to the electors of the State or any county." Act 11, § 8 (emphasis added). It will impose no limitation on a nonprofit corporation's efforts to qualify a question for the ballot, or to keep a question from qualifying.

Thus, even if Act 11 had been in effect, Grassroot would not have engaged in ballot-issue activity when it made arguments against SB 2807 (a bill to add a tax rebate question to the ballot), or made arguments for HB 2376 (a bill to add a question concerning the Board of Education to the ballot) in 2010. *See* Compl. ¶ 9. It would not have engaged in ballot-issue activity when it "joined an amicus brief urging a court to keep a measure off the ballot" in 2018. *Id.* ¶ 11. Nor would it have engaged in ballot-issue activity when it "proposed multiple amendments to the Honolulu Charter" in 2025. *Id.* And if, as Grassroot predicts, future "legislators propose a ballot measure to approve a constitutional amendment that would allow a state property tax[,]" Grassroot will not engage in ballot-issue activity if it "advocate[s] against these measures being put on the ballot." *Id.* ¶ 10.

Even with regard to a ballot question that has been formally submitted to the voters, Act 11's definition of "ballot-issue activity" excludes the distribution of "commentary" via a "newspaper" or "blog[.]" Act 11, § 8. Yet this is apparently the

only means by which Grassroot communicates its views about qualified ballot questions. In 2008, it communicated its views about a Honolulu rail initiative by having its director of communications send a letter to the *Honolulu Star-Advertiser*; the newspaper then published it under the heading "Letters and Commentary[.]" Compl. ¶ 9 & n.1.[4] In 2010, Grassroot's director of policy "shared arguments" for and against various ballot measures by publishing commentary about them in a blog post on Grassroot's website. *Id.* ¶ 9 & n.2. In 2018, Grassroot's president and CEO "educated voters" about a ballot measure by doing the same. *Id.* ¶ 9 & n.3. Even Grassroot's efforts to put measures on or keep measures off the ballot—which are not ballot-issue activity for the reasons explained above—have involved publishing blog posts on its website. *Id.* ¶¶ 10–11 & nn. 4–6.

And Grassroot affirmatively disclaims any intention of engaging in "election activity." Act 11 defines "election activity" as "paying, contributing, or expending money or anything of value to support or oppose a candidate, political committee, or political party." Act 11, § 8. Grassroot states that it "does not endorse or donate to political candidates or parties." Compl. ¶ 7; *see id.* ¶ 16 ("Grassroot does not tell

---

[4] The webpages that are "clearly referenced in [Grassroot's] allegations both by name and by link" may be considered incorporated by reference into its Complaint. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 939 (N.D. Cal. 2023); *see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material.").

voters whether to support or oppose [elected officials] as candidates."). Indeed, as a 501(c)(3) organization, Grassroot would forfeit its tax-exempt status if it "participate[d] in" or "intervene[d] in . . . any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 501(c)(3); *see United States v. Dykema*, 666 F.2d 1096, 1101 (7th Cir. 1981) ("[The 501(c)(3)] exemption is lost . . . by participation in any political campaign on behalf of any candidate for public office. It need not form a substantial part of the organization's activities.").

Nonetheless, Grassroot expresses concern that it may unintentionally "veer[] into" election activity merely by "discuss[ing] the actions and positions of officeholders who may also be candidates." Compl. ¶¶ 46, 48. This concern is completely unfounded.

Grassroot makes allegations about only two past events involving candidates for political office, and neither substantiates its concern that it might accidentally cross Act 11's line. In 2022, it held a "doctor shortage forum" during which a panelist discussed the efforts of incumbent officeholders to address the issue. *Id.* ¶ 15 & n.12. During the same event, an audience member, who stated that she was a legislative candidate, criticized the incumbent Lieutenant Governor. *Id.* There is no indication that the panelist expressed support for or opposition to any person's candidacy for office, nor that he was paid to do so by Grassroot. Likewise, nothing in the Complaint or the hyperlinked account of the event suggests that the audience

member was in any way affiliated with Grassroot other than as an attendee at its event, nor is there any allegation that money was paid to support or oppose her candidacy, or the Lieutenant Governor's.

Similarly, in 2024, Grassroot held an event to discuss a housing policy brief at which a Honolulu City Council member was a featured speaker. *Id.* ¶ 15 & n.13. Again, there is no indication that the councilmember, or anyone else, advocated for or against anyone's candidacy for office (including the councilmember's), nor that anyone was paid by Grassroot to do so. Given its 501(c)(3) status, Grassroot presumably does not intend to imply otherwise, or to suggest in any way that it directs money to support or oppose the campaigns of individual candidates. *See id.* ¶¶ 7, 16 (confirming that Grassroot does not engage in such activity).[5]

---

[5] Perhaps recognizing that its conduct is not even arguably election activity under Act 11, Grassroot says that, "[a]t the very least, [it] may face the burden of responding to and defending against complaints filed with the Department of Commerce and Consumer Affairs [(DCCA)], requesting action against it by Defendants." Compl. ¶ 46. It then links to a DCCA webpage where consumers can file complaints about unfair and deceptive acts and practices, *id.* ¶ 46 n.20, which are prohibited under Chapter 480 of the Hawaii Revised Statutes, not Chapter 414D. Not only is this harm completely speculative, but it is also not traceable to Defendants and not redressable by the relief requested in this case. Anyone could make a frivolous complaint about Grassroot to Defendants, even under current law. But the Court "cannot issue advisory opinions about speculative harm," *United States v. Hawai'i*, 830 F. Supp. 3d 1028, 1044 (D. Haw. 2026), and in any event, "the redressability prong of standing cannot be met when redress depends on 'the unfettered choices made by independent actors[,]'" *Seattle Pac. Univ.*, 104 F.4th at 62 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).

In fact, Grassroot's Complaint contains no allegations regarding the expenditure of any money, which is fundamental to Act 11's definitions of both "election activity" and "ballot-issue activity." *See* Act 11, § 8. Grassroot does not state whether its board members and other personnel who advocate for legislative action, draft policy briefs, host forums, or post on its website receive any compensation, let alone whether such compensation is in any way tied to the conduct alleged in the Complaint. Grassroot does allege that it requests and receives donations, Compl. ¶¶ 20, 49, but it provides no information about how those donations are spent. Because Act 11 solely encompasses conduct that involves "paying, contributing, or expending money or anything of value[,]" this omission, on its own, is fatal to Grassroot's standing theory.[6]

The remainder of the conduct described in Grassroot's Complaint is essentially educational in nature and does not even approach election or ballot-issue activity. Grassroot's alleged discussions of public policy issues with its members and the public—whether through research and white papers, conferences and seminars, mail, email, or social media—do not qualify under Act 11 as advocacy for or against any candidate or ballot question. *See id.* ¶¶ 13–16, 20. And since the

[6] Grassroot's allegation that its donors "will decline to give" due to "the constraints of Act 11" adds nothing to the analysis because it is premised on the unfettered decisions of independent third-party actors holding the incorrect belief that Act 11 will "prohibit[] [Grassroot's] future activity." Compl. ¶ 49.

conduct in which Grassroot intends to engage is not itself covered by Act 11, neither is any "preparatory research, writing, [or] activity" done in anticipation of that conduct. *Id.* ¶¶ 45, 47.

Furthermore, Grassroot provides no indication that it intends to engage in different kinds of conduct in the future. To the contrary, its Complaint states that its future conduct will mirror its past conduct. It will "continue" to engage in the same conduct with regard to ballot measures, including "propos[ing]" that certain questions appear on the ballot and "continu[ing]" to "advocate[] against" putting a state property tax amendment on the ballot—neither of which constitute "ballot-issue activity" under Act 11. *Id.* ¶¶ 10, 44. It will continue to engage in "legislative advocacy" and it will continue to "discuss the actions and positions of officeholders[,]" none of which is the same as expending money to support or oppose political candidacies. *Id.* ¶ 46. Given that its past conduct has been outside the scope of Act 11, and given that it provides no further "'details about [its] future speech[,] such as "when, to whom, where, or under what circumstances"' [it] intend[s] to violate the law[,]" Grassroot has "failed to bear [its] burden to show the requisite injury-in-fact to confer subject-matter jurisdiction." *Stockton*, 152 F.4th at 1144 (quoting *Lopez*, 630 F.3d at 787).[7]

[7] Even if Grassroot had standing to challenge the portions of Act 11 that apply to it as a domestic nonprofit corporation—which it does not—it would plainly not have standing to challenge the parts of the law that apply only to other types of

A plaintiff's claims of First Amendment injury "lack credibility" when the challenged law "by its terms is not applicable to the plaintiff[.]" *Lopez*, 630 F.3d at 788. The plain language of Act 11 and Grassroot's allegations about its own actions demonstrate that Grassroot lacks any intent to engage in the conduct that Act 11 will place beyond its corporate powers. And as a result, Grassroot has also failed to demonstrate that "there exists a credible threat" that Act 11 will be enforced against it. *Am. Encore*, 152 F.4th at 1114 (quoting *Planned Parenthood*, 122 F.4th at 836).

**3. Grassroot cannot show that injury is imminent when its claimed harm is contingent on the unpredictable qualification of specific ballot measures in future elections.**

Even if Grassroot's allegations are sufficient to show that it intends to engage in conduct that arguably contravenes Act 11's corporate limits, Grassroot still lacks standing because it cannot demonstrate that its claimed harm is imminent. "Despite [the] 'relaxed standing analysis' for pre-enforcement challenges, plaintiffs must still show an actual or imminent injury to a legally protected interest." *Lopez*, 630 F.3d at 785 (citation omitted) (quoting *Canatella v. California*, 304 F.3d 843, 853 n.11 (9th Cir. 2002)); *see id.* at 787–88 ("[M]ere '"some day" intentions . . . do not

---

corporations. *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("[A] plaintiff may have standing to challenge some provisions of a law, but not others."); *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112–13 (9th Cir. 1999) (holding that when a party "cannot assert that it will ever . . . be subject to [particular] provisions," "it has no standing to challenge those provisions").

support a finding of the "actual or imminent" injury that our cases require.'" (quoting *Thomas*, 220 F.3d at 1140)).

With Act 11 not taking effect until after the next election, Grassroot cannot plead actual injury. But it cannot plead imminent injury either—that is, it cannot show harm that is "*certainly* impending[.]" *Lujan*, 504 U.S. at 564 n.2 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). That is because, despite its purported intent to "continue engaging in ballot-issue activity," Compl. ¶ 44, Grassroot does not and cannot know what issues will be on the ballot in the future.

Take, for example, "a ballot measure to approve a constitutional amendment that would allow a state property tax." *Id.* ¶ 10. As explained above, Grassroot cannot engage in "ballot-issue activity" with respect to such a measure unless it actually qualifies for the ballot. But a valid ballot measure concerning a state property tax constitutional amendment has *never* been submitted to the voters of Hawai'i. In 2018, the Legislature passed a ballot measure proposing an amendment to allow a state surcharge on investment real property, but the Hawai'i Supreme Court declared it invalid prior to the election. *City & Cty. of Honolulu v. State*, 431 P.3d 1228, 1232–33, 1236 (Haw. 2018). Since then, no such measure has passed the Legislature. During the 2026 legislative session, two bills that would have proposed a residential investment property surcharge amendment failed to receive hearings in the State

Senate.[8] So even if Grassroot has shown that it intends to engage in "ballot-issue activity" with regard to this type of measure, it has not demonstrated that its injury is imminent because the measure may not (or is perhaps even unlikely to) be on the ballot in 2028, or in 2030, or 2032.

The same can be said of county-level ballot measures. Grassroot "proposed multiple amendments to the Honolulu Charter" in 2025, "one of which made it past the Charter Commission's first round of review in 2026." Compl. ¶ 11 & n.7 (indicating, in the linked blog post, that the proposal that advanced related to the creation of a "Cost of Government Commission"). But that proposal did not advance past the second round of review and will not appear on the 2026 ballot.[9] Likewise, Grassroot alleges that it will advocate about "the proposal currently being reviewed by the Charter [C]ommission for an empty homes tax measure." *Id.* ¶ 12 & n. 8. That proposal did not make the cut either.[10]

---

[8] *See HB2147 HD2*, Haw. St. Legislature, https://www.capitol.hawaii.gov/session/measure_indiv.aspx?billtype=HB&billnumber=2147&year=2026 (last updated Mar. 10, 2026); *SB 2464*, Haw. St. Legislature, https://www.capitol.hawaii.gov/session/measure_indiv.aspx?billtype=SB&billnumber=2464&year=2026 (last updated Jan. 28, 2026).

[9] Honolulu Charter Comm'n, *Final Ballot Question & Justification Language*, Honolulu City Council (July 20, 2026), https://www4.honolulu.gov/docushare/dsweb/Get/Document-359827/Final%20Approved%20Ballot%20Questions%20and%20Justification%20Language%20(072026).pdf.

[10] Ben Angarone, *Empty Homes Tax: Oʻahu Voters Blocked From Weighing In*, Honolulu Civil Beat (July 21, 2026), https://www.civilbeat.org/2026/07/empty-homes-tax-oahu-voters-blocked-from-weighing-in/.

Act 11 does not go into effect until 2027, so Grassroot may respond that these allegations are only intended to demonstrate its general interest in advocacy relating to ballot measures. But the point is that the appearance of any particular issue on the ballot is too unpredictable a condition to support the finding of an actual or imminent controversy between Grassroot and Defendants. As to ballot-issue activity, Act 11 only applies to questions that have been approved to appear on voters' ballots. Act 11, § 8. And Grassroot only opines on ballot measures "that affect key areas of its mission[.]" Compl. ¶ 8; *see id.* ¶ 44 (stating that Grassroot will advocate around "ballot measures impacting individual liberty, economic freedom, and limited, accountable government"). Whether or not a measure important to Grassroot will make it onto the ballot in any given year is anyone's guess. Indeed, there were *no* statewide initiatives on the ballot *at all* in two of the past four election years.[11] And Grassroot provides no indication that it took any action relating to the measures that were on the ballot in 2024, nor that it considers any of the measures in 2026 (other than those that did not qualify) as affecting its mission.

The overly speculative nature of Grassroot's claims to injury is made even clearer when Grassroot is contrasted with other organizations that have been found to have standing in analogous circumstances. For example, when discussing pre-

[11] *See Results*, State of Haw. Office of Elections, https://elections.hawaii.gov/election-results/ (last visited Aug. 20, 2026) (statewide summaries for 2020 and 2022 elections).

enforcement First Amendment challenges in *Lopez*, the Ninth Circuit pointed to two situations in which organizational plaintiffs had "carr[ied] their burden of establishing injury in fact" by "provid[ing] adequate details about their intended speech." 630 F.3d at 787. In one, the organization had standing because one of its members "alleged he desired to produce and distribute flyers regarding *a specific ballot initiative*[.]" *Id.* (emphasis added) (citing *ACLU v. Heller*, 378 F.3d 979, 984 (9th Cir. 2004)). In another, the organization carried its burden by "show[ing] . . . that it had planned to spend over $1000 to defeat *a specific California proposition* in the November 2000 election." *Id.* (emphasis added) (citing *Getman*, 328 F.3d at 1093). Grassroot, on the other hand, cannot point to any specific measure it intends to support or oppose in the future.

"An injury is generally not imminent if it is contingent on a series of future events." *United States v. Hawai'i*, 830 F. Supp. 3d at 1039 (citing *Hippocratic Med.*, 602 U.S. at 381). Grassroot's purported injury is contingent on measures being placed on the ballot *and* those measures being sufficiently related to its core values. Because it cannot say when—or even if—those conditions will be met in the future, Grassroot cannot show "that [its] injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2). It has therefore failed to establish the actual or imminent injury required to give it standing.

#### 4. Grassroot cannot base its standing on harm to the Grassroot Action Center.

Grassroot also cannot establish standing based on its allegations concerning a separate—and as-yet non-existent—501(c)(4) organization. Grassroot alleges that its board "approved the creation" of a 501(c)(4) organization called the "Grassroot Action Center" (Action Center) on April 10. Compl. ¶ 17. It further indicates that it has retained a law firm in connection with the creation of the Action Center, *id.*, and that it will "allow its attorneys to finish submitting the paperwork for the Action Center to the proper authorities[,]" *id.* ¶ 50. However, Grassroot says it will not "activat[e]" the Action Center, "including funding it[,]" because of Act 11. *Id.*

Grassroot cannot establish standing based on Act 11's potential effects on the Action Center. "The ordinary rule of standing is that a party 'must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). A plaintiff can establish third-party standing if it has "a '"close" relationship' to the third part[y]" and "the third part[y] [is] hindered from protecting [its] own interests by bringing a lawsuit of [its] own." *Id.* (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)). Grassroot's Complaint establishes neither. It is unclear exactly what relationship Grassroot will have with the Action Center, and there is no reason to believe the Action Center,

which will itself be a nonprofit corporation, would be unable to file its own lawsuit.[12]

An even more fundamental problem, though, is that the Action Center has not yet been created. It therefore cannot be said to have any interests at all. Even if "the bar to third-party standing is lowered in the First Amendment context[,]" *id.* at 1070, the Action Center "must exist before [it] can speak[,]" *Citizens United v. FEC*, 558 U.S. 310, 339 (2010).

If, on the other hand, these allegations are supposed to show another way that Grassroot will itself be injured by Act 11, they fall short. Grassroot concedes, as it must, that Act 11 will not actually prevent it from creating the Action Center. Compl. ¶ 50. And there is nothing in Act 11 that prevents Grassroot from transferring money to the Action Center or otherwise taking steps to "activat[e]" it. *Id.* Grassroot cannot generate an injury for standing purposes simply by voluntarily "refrain[ing]" from doing so. *Id.*; *see Clapper*, 568 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

In any event, even if the Action Center shared Grasroot's interests, there are no allegations indicating that the Action Center will be engaged in meaningfully

---

[12] For similar reasons, Grassroot cannot assert third-party claims on behalf of "its donors[] and its audience[.]" Compl. ¶ 64. *See Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 893 n.11 (9th Cir. 2018) (explaining that "absent a showing of a 'genuine obstacle' to the affected individuals bringing their own [First Amendment] claims, there is no third-party standing).

different conduct from Grassroot. Quite the opposite: Grassroot alleges that the Action Center will participate in "issue advocacy, legislative engagement, and grassroots mobilization[,]" but, like Grassroot, "will not donate to candidates or advocate for or against candidates[.]" Compl. ¶¶ 18, 19. So just as Grassroot's alleged conduct would not run afoul of Act 11, neither would the Action Center's.

**B. Grassroot fails to state a claim under the First Amendment.**

The five counts alleged in Grassroot's Complaint are all premised on the claim that Act 11 violates the First Amendment. *See id.* at ¶¶ 51–97. At the core of these claims—whether characterized as "free speech," *id.* at ¶ 52, "freedom of association," *id.* at ¶ 71, or "freedom of the press," *id.* at ¶ 79—is Grassroot's assertion that Act 11 is a "ban on corporate speech," *id.* at ¶ 54 (quoting *Citizens United*, 558 U.S. at 337), that violates its First Amendment rights, *id.* at ¶¶ 51–97. But these claims fail as a matter of law because Act 11 does not regulate Grassroot's First Amendment rights at all. Rather, it specifies the powers that corporations created under Hawaiʻi law are given and the objectives they may lawfully pursue—an authority that is unquestionably within the State's purview. In other words, Act 11 establishes that, as a matter of corporate law, Hawaiʻi nonprofit corporations like Grassroot are never given the power to engage in "ballot-issue activity" or "election activity" and thus never obtain any "right" to do so. Absent such a predicate right,

the First Amendment is not implicated.[13]

The Supreme Court has long recognized that, unlike a natural person, "[a] corporation is the creature of the law and none of its powers are original." *Waters-Pierce Oil Co. v. Texas*, 177 U.S. 28, 43 (1900). A corporation's powers "are precisely what the incorporating act has made them, and can only be exerted in the manner which that act authorizes." *Id.*; *see also Trs. of Dartmouth Coll. v. Woodward*, 17 U.S. (4 Wheat.) 518, 636 (1819) ("A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence.").

That principle holds true today. Grassroot may rely on *Citizens United* to assert that "First Amendment protection extends to corporations," Compl. ¶ 55 (quoting 558 U.S. at 342), but *Citizens United* involved a nonprofit corporation that was authorized by its state to make political expenditures. The question of whether a state could withhold that authorization was therefore never at issue. *See* 558 U.S. at 389 n.5 (Scalia, J., concurring) ("[E]ven if the common law was 'generally interpreted' to prohibit corporate political expenditures as ultra vires, that would have nothing to do with whether political expenditures that *were* authorized by a

---

[13] Defendants' argument as to why Grassroot's claims fail as a matter of law will be explained more fully in their forthcoming memorandum in opposition to Grassroot's Motion for Preliminary Injunction, ECF No. 15.

corporation's charter could constitutionally be suppressed."). As such, *Citizens United* did not upset the principal that "in 1791 (as now) corporations could pursue only the objectives set forth in their charters[.]" *Id.* at 386 (Scalia, J., concurring); *see Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 713 (2014) ("[T]he objectives that may properly be pursued by the companies in these cases are governed by the laws of the States in which they were incorporated[.]").

Nor is Act 11 void for vagueness. A statute is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Yamada v. Snipes*, 786 F.3d 1182, 1187 (9th Cir. 2015) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Act 11 does neither. Grassroot takes issue with the term "bona fide news," Compl. ¶ 95, but the phrase "bona fide" has a plain meaning, "has many applications in the law," and "is generally used [without ambiguity] according to its dictionary definition—that is, meaning '[a]cting or done in good faith; sincere, genuine.'" *Griffin v. Lockhart*, 935 F.2d 926, 929 n.2 (8th Cir. 1991) (quoting *Oxford English Dictionary* (2d ed. 1989)); *cf. Ctr. for Individual Freedom, Inc. v. Tennant*, 706 F.3d 270, 289 (4th Cir. 2013) (discussing the term "bona fide news account" in a West Virginia campaign finance law and finding that the plaintiff did not have standing to assert that the term was unconstitutionally vague). Grassroot also takes issue with the definitions of "ballot-

issue activity," "election activity," and "artificial-person powers," Compl. ¶ 95, even though the Ninth Circuit has concluded that very similar language in Hawai‘i's campaign finance law definitions is *not* unconstitutionally vague. *Yamada*, 786 F.3d at 1192–94 (holding that the terms "advocates," "supports," and "opposition" used in Haw. Rev. Stat. § 11-302, are not vague even without a narrowing construction).

Act 11 is an unambiguous exercise of the State's longstanding authority to set the "objectives that may properly be pursued" under a corporation's charter, *Hobby Lobby*, 573 U.S. at 713, and not a restriction on a right to pursue any authorized purpose. Because the Act does not implicate the First Amendment and its terms are not unconstitutionally vague, Grassroot's claims fail as a matter of law.[14]

## IV. CONCLUSION

The Court should grant Defendants' motion, dismiss Grassroot's Complaint, and deny Grassroot's Motion for Preliminary Injunction as moot.

DATED: Honolulu, Hawai‘i, August 20, 2026.

/s/ *Thomas J. Hughes*
KALIKOʻONĀLANI D. FERNANDES
EWAN C. RAYNER
THOMAS J. HUGHES

Attorneys for Defendants

---

[14] Although not mentioned in its prayer for relief, Grassroot appears to assert an entitlement to "damages." *See* Compl. ¶¶ 88, 92. Any claim for damages is barred. State officials sued in their official capacities for damages are entitled to Eleventh Amendment immunity. *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).