ANNE E. LOPEZ 7609
Attorney General of Hawai‘i
KALIKO‘ONĀLANI 9964
D. FERNANDES
Solicitor General
EWAN C. RAYNER 10222
THOMAS J. HUGHES 11059
Deputy Solicitors General
Department of the Attorney General,
State of Hawai‘i
425 Queen Street
Honolulu, Hawai‘i 96813
Tel: (808) 586-1360
E-mail: ewan.rayner@hawaii.gov
thomas.j.hughes@hawaii.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| GRASSROOT INSTITUTE OF HAWAII, a Hawai‘i nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANNE E. LOPEZ, in her official capacity as Hawai‘i Attorney General, and NADINE ANDO, in her official capacity as Director of Hawai‘i Department of Commerce and Consumer Affairs,<br><br>Defendants. | No. 1:26-cv-00279-LEK-RT<br><br>**DEFENDANTS’ MEMORANDUM IN OPPOSITION TO PLAINTIFF’S MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 15]; CERTIFICATE OF SERVICE**<br><br>Hearing Date: October 13, 2026<br>Hearing Time: 2:30 p.m.<br>Judge: Hon. Leslie E. Kobayashi |

# TABLE OF CONTENTS

I. BACKGROUND ....................................................................... 2

A. Act 11 ....................................................................... 2

B. Grassroot ....................................................................... 3

II. LEGAL STANDARD ....................................................................... 4

III. ARGUMENT ....................................................................... 5

A. Grassroot has not established that it is likely to succeed on the merits ....................................................................... 5

1. Grassroot does not have standing ....................................................................... 5

2. Grassroot is unlikely to succeed on its First Amendment claims ....................................................................... 7

i. Act 11 is a valid exercise of the State's longstanding authority to define corporate powers ....................................................................... 8

ii. Grassroot's overbreadth challenge fails ....................................................................... 14

iii. Grassroot's Press Clause argument misinterprets Act 11 ....................................................................... 15

iv. Act 11 does not impose unconstitutional conditions on Grassroot ....................................................................... 18

3. Act 11 is not unconstitutionally vague ....................................................................... 18

B. Grassroot has not shown it is likely to suffer irreparable harm ....................................................................... 22

C. Grassroot has not satisfied the other preliminary injunction factors ....................................................................... 24

IV. CONCLUSION ....................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*4805 Convoy, Inc. v. City of San Diego*,
183 F.3d 1108 (9th Cir. 1999) ....................15

*Alaska Right to Life Comm. v. Miles*,
441 F.3d 773 (9th Cir. 2006) ....................20

*Animal Legal Def. Fund v. Wasden*,
878 F.3d 1184 (9th Cir. 2018) ....................13

*Arizona v. Mayorkas*,
584 F. Supp. 3d 783 (D. Ariz. 2022) ....................5

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989)....................6

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) ....................5, 24

*Bank of Augusta v. Earle*,
38 U.S. (13 Pet.) 519 (1839)....................8, 12

*Boardman v. Pacific Seafood Group*,
822 F.3d 1011 (9th Cir. 2016) ....................23

*Burks v. Lasker*,
441 U.S. 471 (1979)....................8

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014).................... 10, 11, 12, 13

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
271 F.3d 1141 (9th Cir. 2001) .................... 18, 19

*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
451 F.3d 1257 (11th Cir. 2006) ....................15

*Citizens United v. FEC*,
558 U.S. 310 (2010).................... 10, 11, 17

*Colorado v. EPA*,
989 F.3d 874 (10th Cir. 2021) ....................22

*Cort v. Ash*,
422 U.S. 66 (1975)....................8

*Cross v. Midtown Club, Inc.*,
365 A.2d 1227 (Conn. Super. Ct. 1976)....................12

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019) ....................5, 22

*Daley v. Alpha Kappa Alpha Sorority, Inc.*,
26 A.3d 723 (D.C. 2011) ....................11

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ....................22

*E. Bay Sanctuary Covenant v. Garland*,
994 F.3d 962 (9th Cir. 2020) ....................24

*FDA v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024)....................7

*Freedman v. magicJack Vocaltec Ltd.*,
963 F.3d 1125 (11th Cir. 2020) ....................9

*Freedom to Travel Campaign v. Newcomb*,
82 F.3d 1431 (9th Cir. 1996) ....................19

*Garysburg Mfg. Co. v. Pender County*,
42 F.2d 500 (E.D.N.C. 1930)....................9

*Get Outdoors II, LLC v. City of San Diego*,
506 F.3d 886 (9th Cir. 2007) .................... 14, 15

*Griffin v. Lockhart*,
935 F.2d 926 (8th Cir. 1991) ....................20

*Hill v. Colorado*,
530 U.S. 703 (2000)....................22

*Home Ins. Co. of N.Y. v. New York*,
134 U.S. 594 (1890)....................12

*Human Life of Wash. Inc. v. Brumsickle*,
624 F.3d 990 (9th Cir. 2010) .................... 19, 22

*Huntington v. Sav. Bank*,
96 U.S. 388 (1877)....................9

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991)....................9

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2009) ....................22

*Koehler v. Bank of Bermuda (N.Y.) Ltd.*,
229 F.3d 187 (2d Cir. 2000) ....................9

*Lovell v. City of Griffin*,
303 U.S. 444 (1938)....................16

*Maryland v. King*,
567 U.S. 1301 (2012)....................25

*Matos ex rel. Matos v. Clinton Sch. Dist.*,
367 F.3d 68 (1st Cir. 2004)....................23

*N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*,
854 F.3d 1236 (10th Cir. 2017) ....................23

*Nat'l Org. for Marriage v. McKee*,
649 F.3d 34 (1st Cir. 2011)....................21

*Nevada v. United States*,
364 F. Supp.3d 1146 (D. Nev. 2019)....................25

*Obsidian Fin. Group, LLC v. Cox*,
740 F.3d 1284 (9th Cir. 2014) .................... 16, 17

*Perry v. Sindermann*,
408 U.S. 593 (1972)....................18

*Rudolph Wurlitzer Co. v. Comm'r*,
81 F.2d 971 (6th Cir. 1936) .......................................................................9

*Seattle Pac. Univ. v. Ferguson*,
104 F.4th 50 (9th Cir. 2024) .......................................................................6

*SEC v. John Adams Tr. Corp.*,
697 F. Supp. 573 (D. Mass. 1988) .......................................................................9

*Tingley v. Ferguson*,
47 F.4th 1055, (9th Cir. 2022) .......................................................................7

*Trs. of Dartmouth Coll. v. Woodward*,
17 U.S. (4 Wheat.) 518 (1819) .......................................................................8

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......................................................................15

*United States v. Dang*,
488 F.3d 1135 (9th Cir. 2007) .......................................................................14

*United States v. Hansen*,
599 U.S. 762 (2023) .......................................................................14

*United States v. Williams*,
553 U.S. 285 (2008) .......................................................................18

*Waters-Pierce Oil Co. v. Texas*,
177 U.S. 28 (1900) .......................................................................8

*Winter v. Nat'l Res. Defense Council, Inc.*,
555 U.S. 7 (2008) .......................................................................4, 22

*Yamada v. Snipes*,
786 F.3d 1182 (9th Cir. 2015) ....................................................... 18, 20, 21

**Statutes**

Haw. Rev. Stat. § 11-302 .......................................................................20

**Legislative History**

Act 11, Session Laws of Hawai‘i 2026 ....................................................... passim

**Other Authorities**

1 J. Cox & T. Hazen, Treatise of the Law of Corporations § 4:1 (3d ed. 2010).....10

7A W. Fletcher, Cyclopedia of the Law of Corporations § 3399 (rev. ed. 2026)...11

*Blog*, Mirriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/blog.........................................17

*Blog*, Oxford English Dictionary Online, https://www.oed.com/dictionary/blog_n?tab=meaning_ and_use#11172278 .....17

*Oxford English Dictionary* (2d ed. 1989) ..............................................................20

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 15]**

Plaintiff Grassroot Institute of Hawaii (Grassroot) is a Hawaiʻi nonprofit corporation that opposes Act 11, a recently enacted law relating to corporations' powers to spend money in elections. Grassroot believes that Act 11 violates the First Amendment and seeks a preliminary injunction enjoining Defendants from enforcing it, even though the law does not go into effect until July 1, 2027. Grassroot's Motion should be denied for several reasons.

First, Grassroot does not have standing to challenge Act 11 on a pre-enforcement basis. Grassroot has not shown that its past conduct has been, and its future alleged conduct would be, restricted by Act 11. Even if that were not so, Grassroot cannot allege when (if ever) it will engage in the conduct it thinks Act 11 disallows because its participation in elections is conditional on certain measures appearing on the ballot and, as a result, is highly speculative.

Second, Grassroot has failed to show that it is likely to succeed on the merits. Act 11 does not implicate the First Amendment because it does no more than define the lawful powers and objectives of corporations. The authority of the State to define corporate powers and the objectives that they may lawfully pursue is longstanding and well-established. And without the corporate power to spend money supporting or opposing candidates or ballot measures in elections under Act 11, Grassroot has no First Amendment right that the Act would restrict. Grassroot's Press Clause,

overbreadth, and vagueness arguments fare no better.

Finally, Grassroot's inability to show imminent irreparable harm precludes the extraordinary relief it seeks. There are almost ten months until the law goes into effect—time enough for the case to be decided on summary judgment before Act 11's effective date. And Grassroot's vague arguments and declarations purporting to show reduced fundraising as a result of Act 11's future effect do not demonstrate that it is suffering either current or imminent harm.

# I. BACKGROUND

## A. Act 11

Like every state, Hawai‘i has enacted laws that authorize the formation of corporate entities, including nonprofit corporations. In 2026, the Legislature passed Act 11, exercising its authority to redefine the purposes and powers of corporate entities. The Act takes effect on July 1, 2027. Act 11, § 27, ECF No. 15-6. It will amend the "Purposes" section of the Hawaii Nonprofit Corporations Act (which is codified as Chapter 414D of the Hawaii Revised Statutes) to provide that Hawai‘i nonprofit corporations "ha[ve] the purpose of engaging in any lawful activity, not including election activity or ballot-issue activity[.]" *Id.*, § 9. It will similarly amend the "General powers" section to provide that Hawai‘i nonprofit corporations, other than candidate and noncandidate committees, do "not have the power to expend moneys on or participate in any election activity or ballot-issue activity." *Id.*, § 10.

Act 11 defines "ballot-issue activity" as "paying, contributing, or expending money or anything of value to support or oppose a constitutional amendment, county charter amendment, or other ballot question after it has been formally certified or submitted to the electors of the State or any county." *Id.*, § 8. "Election activity" is defined as "paying, contributing, or expending money or anything of value to support or oppose a candidate, political committee, or political party." *Id.* Excluded from both definitions is the "distribut[ion]" of "any bona fide news story, commentary or editorial" through "the facilities of a broadcasting station or of any print, online, or digital newspaper, magazine, blog, or other periodical publication" not "owned or controlled by a candidate, political committee, or political party." *Id.* Under Act 11, "[a]ny act undertaken by a [nonprofit] corporation that constitutes an election activity or ballot-issue activity" is "ultra vires and void." *Id.*, § 10. Once the Act goes into effect, it will authorize the Attorney General and the Director of Commerce and Consumer Affairs to bring actions and impose specified penalties for ultra vires acts. *Id.*, § 23.

Act 11 makes similar changes to the powers of other corporate entities, *e.g.*, *id.*, §§ 4–6, 12, 16, and contains provisions applicable to foreign corporations operating in Hawaiʻi, *see, e.g.*, *id.*, § 10.

**B. Grassroot**

Grassroot is a Hawaiʻi nonprofit corporation founded in 2001. Declaration of

Keliʻi Akina, ECF No. 15-2, ¶ 3. It is not a candidate or noncandidate committee, and it is exempt from federal taxation under 26 U.S.C. § 501(c)(3). *Id.*, ¶ 4. Grassroot identifies its mission as "educating the public and leaders about key public issues and encouraging the public to work together for change." Akina Decl. ¶ 10. Grassroot states that it accomplishes this mission by "publish[ing] timely research and commentaries, . . . organiz[ing] events, conferences and seminars[,] . . . prepar[ing] white papers and policy briefs on many topics[,] . . . [and] hold[ing] events to discuss important public issues." *Id.*, ¶ 10-11. In the past, Grassroot has purportedly "advocat[ed] for or against ballot issues that affect key areas of its mission," which it has done "by publishing opinion pieces, granting media interviews, and physically and electronically mailing its communications to supporters." *Id.*, ¶ 5. But it "does not endorse or donate to political candidates or parties." *Id.*, ¶ 4. Grassroot claims that it "fears the penalties for engaging in ballot-issue activity under Act 11," including involuntary dissolution. *Id.*, ¶ 18.

## II. LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"; it is "never awarded as of right." *Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 22, 24 (2008). The plaintiff must establish that "(1) [it] is likely to succeed on the merits of [its] claim, (2) [it] is likely to suffer irreparable harm absent the preliminary injunction, (3) the

balance of equities tips in [its] favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citations omitted).

"Even where a plaintiff demonstrates a likelihood of success on the merits of a free speech claim, [it] must also demonstrate that [it] is likely to suffer irreparable harm in the absence of a preliminary injunction[.]" *Cuviello v. City of Vallejo*, 944 F.3d 816, 831 (9th Cir. 2019) (citation and quotation marks omitted).

## III. ARGUMENT

### A. Grassroot has not established that it is likely to succeed on the merits

#### 1. Grassroot does not have standing

The "likelihood of success on the merits" prong of the preliminary injunction standard "incorporates an assessment of both the plaintiff's standing and the merits of the underlying claim." *Arizona v. Mayorkas*, 584 F. Supp. 3d 783, 789 (D. Ariz. 2022). Defendant's Motion to Dismiss, ECF No. 22-1, explains why the allegations in Grassroot's Complaint fail to establish its standing to bring a pre-enforcement First Amendment challenge to Act 11. Those arguments hold true even if the Court considers the declarations filed in support of Grassroot's Motion for Preliminary Injunction.

Dr. Akina's declaration, ECF No. 15-2, contains general information about Grassroot's work that supports some of the factual allegations in the Complaint, ECF No. 1. Other than some minor, non-substantive differences in wording, its contents

are identical to corresponding portions of the Complaint. *Compare* Akina Decl. ¶¶ 3–24 *with* Compl. ¶¶ 6–20, 44–50. The declaration therefore does nothing to establish Grassroot's standing because, like the Complaint, it shows that Grassroot's future conduct is conditional on certain measures appearing on the ballot and, in any event, will be within Act 11's boundaries. ECF No. 22-1 at 8-17.

The declarations of Grassroot donors Mark Monoscalco and John Corboy, ECF Nos. 15-3 and 15-4, get the organization no closer to standing. As Defendants previously noted, *see* ECF No. 22-1 at 13 n.6, Grassroot cannot blame Act 11 for "unfettered choices made by independent actors." *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 62 (9th Cir. 2024) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)). And it certainly cannot do so when the third parties' donation decisions are based on shared misconceptions about how Act 11 will regulate Grassroot's future conduct. *See* Monoscalco Decl. ¶ 6 (predicting that Act 11 will limit Grassroot's "advocacy about ballot measures" and its "efforts to influence legislation"); Corboy Decl. ¶ 7 (predicting that Act 11 will "mute[]" Grassroot's ability to speak about ballot measures).[1]

[1] The donors Grassroot identifies appear to have particularly close ties to the organization. One is a member of Grassroot's board, Monoscalco Decl. ¶ 3–4, and the other is a former board member, Corboy Decl. ¶ 3. Defendants assume for purposes of this motion that the donors' decisions relating to Act 11 were made independently of Grassroot, but they note, including for the purposes of any future

And to the extent it is attempting to do so, Grassroot also cannot establish standing on behalf of its donors. *See* ECF No. 22-1 at 21 n.12; Corboy Decl. ¶ 6 ("Act 11 is a violation of my rights as an individual[.]"). There appears to be no reason the donors could not bring lawsuits on their own behalf. *See Tingley v. Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022).

**2. Grassroot is unlikely to succeed on its First Amendment claims**

Grassroot argues that Act 11 directly violates its "right to speak" because First Amendment protections automatically "extend[] to corporations." ECF No. 15-1 at 7 (citation omitted). It argues further that the Act is overbroad, *id.* at 25–27, that it violates the Press Clause, *id.* at 12–13, that it imposes "unconstitutional conditions" on Grassroot's claimed First Amendment rights, *id.* at 13–14, and that it is unconstitutionally vague, *id.* at 23–25. While most of these claims fail for their own independent reasons, they all also fail on the same, overarching basis: Act 11 does not regulate Grassroot's First Amendment rights at all.

Instead, Act 11 defines the powers that corporations created under Hawaiʻi law possess and the objectives they may lawfully pursue—an authority that is unquestionably within the State's purview. Specifically, Act 11 establishes that, as

---

discovery, that "[a]n organization cannot manufacture its own standing[.]" *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

a matter of corporate law, Hawai‘i nonprofit corporations like Grassroot do not possess the power to engage in "ballot-issue activity" or "election activity." They therefore never obtain any "right" to do so. And, absent such a predicate right, the First Amendment is not implicated.

**i. Act 11 is a valid exercise of the State's longstanding authority to define corporate powers**

The Supreme Court has long recognized that, unlike a natural person, "[a] corporation is the creature of the law and none of its powers are original." *Waters-Pierce Oil Co. v. Texas*, 177 U.S. 28, 43 (1900). A corporation's powers "are precisely what the incorporating act has made them, and can only be exerted in the manner which that act authorizes." *Id.*; *see also Trs. of Dartmouth Coll. v. Woodward*, 17 U.S. (4 Wheat.) 518, 636 (1819) ("A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence."). A corporation is, in other words, "clothed . . . with the character given by [its] charter." *Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519, 544 (1839).

That character comes from state law. *Cort v. Ash*, 422 U.S. 66, 84 (1975) ("Corporations are creatures of state law[.]"). "[S]tate law . . . is the font of corporate directors' powers[,]" *Burks v. Lasker*, 441 U.S. 471, 478 (1979), and the *source* of a corporation's authority, *see, e.g.*, *Rudolph Wurlitzer Co. v. Comm'r*, 81 F.2d 971,

973 (6th Cir. 1936) ("[T]he sovereignty which determines the existence or non-existence of power in a state corporation is the state.") (collecting cases); *Huntington v. Sav. Bank*, 96 U.S. 388, 393 (1877) ("A corporation created by statute can exercise no powers and has no rights except such as are expressly given or necessarily implied."); *Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1133 (11th Cir. 2020) (noting the "wide[] accept[ance]" of the theory that corporations "are creatures of state law" (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991))); *Koehler v. Bank of Bermuda (N.Y.) Ltd.*, 229 F.3d 187, 192 n.9 (2d Cir. 2000) (Sotomayor, J., dissenting from the denial of rehearing en banc) ("[U]nlike individuals, [corporations] exist only through an exercise of sovereignty."); *Garysburg Mfg. Co. v. Pender County*, 42 F.2d 500, 503 (E.D.N.C. 1930) (explaining that a state can "grant and withhold powers from a corporation[,]" which it "cannot do as to an individual").[2]

[2] The cases Grassroot cites purportedly rejecting this theory actually further demonstrate Defendants' point. In *SEC v. John Adams Tr. Corp.*, for example, *see* ECF No. 15-1 at 9–10, it was the "legally fictive and essentially amoral character of the corporation" that led the court to find that "factors traditionally considered by courts in assessing the likelihood of future violations by individuals . . . have little bearing on the likelihood of further *corporate* violations[,]" 697 F. Supp. 573, 578, 579 n.6 (D. Mass. 1988). In other words, courts have long recognized the obvious differences between corporations and people, and have thus treated them differently. Even the language Grassroot quotes from *John Adams*, stating that "[t]he flow of Anglo-Saxon corporate law . . . has standfastly sought to avoid . . . the anthropomorphic fallacy . . . that the corporation was but an individual[,]" ECF No. 15-1 at 9–10 (quoting 697 F. Supp. at 579 n.6), means that the law has developed to *avoid* treating corporations purely as individuals.

The principle that corporations are artificial creatures of state law that derive their powers from state law holds true today. Grassroot relies on *Citizens United* to assert that "First Amendment protection extends to corporations." ECF No. 15-1 at 7 (quoting 558 U.S. at 342), but *Citizens United* neither resolves the question at issue here nor supports Grassroot's theory that corporations, by definition, must have inherent First Amendment rights.

*Citizens United* involved a nonprofit corporation that was authorized by its state and corporate charter to make political expenditures. By the time the Supreme Court decided the case, such authorization had in fact become ubiquitous. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 711 (2014) (Under "modern corporate law[,] '[e]ach American jurisdiction . . . either expressly or by implication authorizes corporations to be formed under its general corporation act for *any lawful purpose* or business." (quoting 1 J. Cox & T. Hazen, Treatise of the Law of Corporations § 4:1, p. 224 (3d ed. 2010))). The question of whether a state could withhold authorization to engage in certain political speech at the outset—i.e., in the law defining corporations' powers—was therefore never at issue in *Citizens United*. *See* 558 U.S. at 389 n.5 (Scalia, J., concurring) ("[E]ven if the common law was 'generally interpreted' to prohibit corporate political expenditures as ultra vires, that would have nothing to do with whether political expenditures that *were* authorized by a corporation's charter could constitutionally be suppressed.").

In other words, *Citizens United* answered the question of whether the government can constitutionally restrict a corporation's ability to engage in political speech when the state had granted the corporation the authority to engage in the relevant activity. But it did not upset the principal that "in 1791 (as now) corporations could pursue only the objectives set forth in their charters[.]" *Id.* at 386 (Scalia, J., concurring).[3] And the Court underscored that principle a few years after *Citizens United*, when it stated in *Hobby Lobby* that "the objectives that may properly be pursued by the companies in these cases are governed by the laws of the States in which they were incorporated[.]" 573 U.S. at 713. Embracing Grassroot's theory would be contrary to that principle and would upset the well-established rule that pursuing objectives or taking acts that are "not within the express or implied powers of the corporation as fixed by its charter, governing statutes, or the common law" are "*ultra vires*." 7A W. Fletcher, Cyclopedia of the Law of Corporations § 3399 (rev. ed. 2026); *see also, e.g.*, *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 731 (D.C. 2011) (explaining that *ultra vires* claims against corporations may stand where corporations "have exceeded the powers conferred upon them by

[3] Justice Scalia made it even clearer that the First Amendment analysis in *Citizens United* applied only where corporations were pursuing objectives authorized by their charters when he chided Justice Stevens' dissent for "provid[ing] no evidence that [corporations'] *speech in the pursuit of those objectives* [that were set forth in their charters] could be censored." 558 U.S. at 386 (Scalia, J., concurring).

the certificate of incorporation, the bylaws, and the state statutes regulating corporate powers" (citing *Cross v. Midtown Club, Inc.,* 365 A.2d 1227, 1229 (Conn. Super. Ct. 1976)).

Grassroot's "aggregate" theory of corporate law does not help it overcome this obstacle, either. Although the Supreme Court has noted that corporations are associations of individuals, when individuals associate as a corporation, they do so "under a form authorized by law[,]" and under that form, "all the faculties which constitute the person are admitted, *unless there be some of them that are prohibited*." *Bank of Augusta*, 38 U.S. (13 Pet.) at 542–43 (emphasis added). Stated differently, Grassroot is correct to the extent that the right to form a corporation "is a right or privilege by which several individuals may unite themselves under a common name, and act as a single person[.]" *Home Ins. Co. of N.Y. v. New York*, 134 U.S. 594, 599–600 (1890). But what Grassroot leaves out from its analysis is that "[t]he granting of such right or privilege rests entirely in the discretion of the state, and, of course, when granted, may be accompanied with such conditions as its legislature may judge most befitting to its interests and policy." *Id.*

Moreover, while Defendants do not dispute that "[w]hen rights, whether constitutional or statutory, are extended to corporations, the purpose is to protect the . . . rights of [the people associated with the corporations]," ECF No. 15-1 at 10 (quoting *Hobby Lobby*, 573 U.S. at 706-07), that principle does not speak to whether

states are required to grant corporations, in the first instance, the facilities that necessitate such "rights." That is why the discussion and holding in *Hobby Lobby*, which examined whether the for-profit corporations at issue were "people" for purposes of the Religious Freedom Restoration Act's (RFRA) protections for the "exercise of religion," were couched in the context of the corporations having been granted such facilities by their respective incorporating states. *See* 573 U.S. at 713 ("[T]he objectives that may properly be pursued by the companies . . . are governed by the laws of the States in which they were incorporated . . . , including the pursuit of profit in conformity with the owners' religious principles.").

Ultimately, Grassroot is wrong when it says that "[t]he Supreme Court has already said that speech bans like . . . Act 11 are unconstitutional[.]" ECF No. 15-1 at 2. To the contrary, Act 11 reflects long-established principles of corporate law and the states' authority to define corporations and to grant or withhold powers in their incorporation statutes. Without the corporate authority to engage in ballot-issue activity and election activity under Act 11, Grassroot will have no corresponding First Amendment right to engage in those activities. That makes Grassroot's argument regarding strict scrutiny, *see* ECF No. 15-1 at 16–23, irrelevant, because "[i]f the government's actions do not implicate speech protected by the First Amendment, [a court] 'need go no further[,]'" *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1194 (9th Cir. 2018) (citation omitted).

### ii. Grassroot's overbreadth challenge fails

Overbreadth challenges are a form of facial challenge applying only to the First Amendment. The overbreadth doctrine is therefore "inapposite to a case in which First Amendment protections are not implicated." *United States v. Dang*, 488 F.3d 1135, 1142 (9th Cir. 2007). This is such a case. Because Act 11 is an exercise of the State's authority to define proper corporate purposes, and not the type of regulation at issue in *Citizens United* that restricts expressive conduct by corporations otherwise authorized to engage in those expressive activities, it does not implicate the First Amendment.

Even leaving that aside, and even assuming Grassroot has standing to challenge the portions of Act 11 that apply to nonprofit corporations, it could not use the overbreadth doctrine as a vehicle to challenge provisions of Act 11 that have no application to it. The overbreadth doctrine allows a court, in certain circumstances, "to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *United States v. Hansen*, 599 U.S. 762, 769 (2023). But the overbreadth doctrine does not obviate the need for Grassroot to show "that it meets the [Article III standing] requirements for each of the provisions it wishes to challenge as overbroad." *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007). So Grassroot "cannot leverage its [claimed] injuries under certain, specific

provisions to state an injury under the [statute] generally[,]" *id.*, and it may "mount a facial challenge" only [to] "provisions of [Act 11] that affect its activities." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1270 (11th Cir. 2006).

The only provisions of Act 11 that could conceivably apply to Grassroot are those regulating nonprofit corporations. It cannot, therefore, show that provisions applicable to "out-of-state corporations" or "unincorporated nonprofit associations[,]" ECF No. 15-1 at 26–27, could apply to it or affect its activities. Grassroot thus lacks standing to challenge those provisions under the overbreadth doctrine. *See 4805 Convoy, Inc. v. City of San Diego,* 183 F.3d 1108, 1112–13 (9th Cir. 1999) (holding that a nude dancing licensee whose license was revoked had standing to challenge provisions relating to license revocation and suspension proceedings but not provisions relating to the granting of licenses because the licensee could not "assert that it [would] ever again be subject to the licensing provisions").[4]

**iii. Grassroot's Press Clause argument misinterprets Act 11**

Contrary to Grassroot's claim, Act 11 does not exempt only speech or news

[4] Moreover, under *Trump v. CASA, Inc.*, injunctions must be no broader than necessary to provide "complete relief to each plaintiff with standing to sue." 606 U.S. 831, 861 (2025). Grassroot is the only Plaintiff. Thus, even if Grassroot could meet the requirements that would entitle it to preliminary injunctive relief—which it cannot—the scope of any injunction must be narrowly tailored to provisions of the law actually applicable to Grassroot.

distributed by the "institutional media." ECF No. 15-1 at 13. Instead, it allows precisely the sort of "publication which affords a vehicle of information and opinion," *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938), that Grassroot asserts the Press Clause must permit.

Act 11 excludes from the definitions of "ballot-issue activity and "election activity":

> any bona fide news story, commentary, or editorial distributed through the facilities of a broadcasting station or of any print, online, or digital newspaper, magazine, blog, or other periodical publication, unless the broadcasting, print, online, or digital facility is owned or controlled by a candidate, political committee, or political party.

Act 11. § 8, ECF No. 15-6. The Act therefore allows nonprofit corporations to publish any "commentary" or "editorial" in "any print, online, or digital newspaper, magazine, blog, or other periodical publication"—explicitly permitting the type of commentaries that Grassroot has published and that it claims it will publish in the future. *See* Defendant's Motion to Dismiss, ECF No. 22-1 at 9–10.

Grassroot's argument centers on the idea that "press protections 'do not turn on whether the [speaker] [is] a trained journalist[ or] formally affiliated with traditional news entities." ECF No. 15-1 at 12 (quoting *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir. 2014). It claims that in Act 11, the Hawai'i Legislature created such a distinction, characterizing Act 11 as "exempt[ing] media corporations' election and ballot-issue activity . . . because it is 'distributed through

the' institutional media." *Id.* at 13 (quoting Act 11, § 4).

But Act 11's exemption is based on conduct, not the identity of the publisher. It does not distinguish between the institutional press and other speakers. While the exemption would include publications by what Grassroot calls the "institutional media," it is in no way limited to that. Instead, it allows any corporation not "owned or controlled by a candidate, political committee, or political party"—including Grassroot—to publish commentary via a blog. The entity does not need to be an institutional news or media organization. *See Blog*, Mirriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/blog (last visited Sept. 7, 2026) ("[A] website that contains online personal reflections, comments, and often hyperlinks, videos, and photographs provided by the writer[.]"); *Blog*, Oxford English Dictionary Online, https://www.oed.com/dictionary/blog_n?tab=meaning_and_use#11172278 (last visited Sept. 7, 2026) ("A frequently updated website, typically run by a single person[.]").

Act 11's exemption therefore applies "equally to both the institutional press and individual speakers[,]" *Cox*, 740 F.3d at 1291, and does not "distinguish between corporations which are deemed to be exempt as media corporations and those which are not[,]"[5] *Citizens United*, 558 U.S. at 352.

[5] Act 11's equal treatment of news, commentary, and editorial whether published by a "media" corporation or other entity also defeats the sole basis on which Grassroot claims that Act 11 "practices viewpoint discrimination." *See* ECF No. 15-1 at 17.

#### iv. Act 11 does not impose unconstitutional conditions on Grassroot

The doctrine of unconstitutional conditions provides that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests[,]" because if it did, "his exercise of those freedoms would in effect be penalized and inhibited." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The doctrine presupposes the existence of a constitutionally protected interest that can be exercised and inhibited by the condition at issue. And as explained above, corporate First Amendment rights only attach to powers granted by the incorporating state. Act 11 does not grant Grassroot the power to make expenditures on ballot-issue activity or election activity, so under Act 11, Grassroot possesses no corresponding right. As such, the doctrine is inapplicable here.

### 3. Act 11 is not unconstitutionally vague

A statute is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Yamada v. Snipes*, 786 F.3d 1182, 1187 (9th Cir. 2015) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Because Act 11 does not implicate the First Amendment, Grassroot's vagueness claims are subject to less stringent scrutiny. *See Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). But even where a statute "implicates First Amendment rights," its "vagueness exceeds

constitutional limits [only] if its deterrent effect on legitimate expression is both real and substantial, and if the statute is not readily subject to a narrowing construction by the state courts." *Id.* at 1151 (cleaned up).

"[D]ue process does not require impossible standards of clarity[.]" *Id.* (citation omitted). So, "even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness." *Id.; see also Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1440 (9th Cir. 1996) ("[A]lthough some reasonable debate may ensue, due process recognizes that some exercise of discretion is inevitable."). The lack of a statutory definition does not render a term unconstitutionally vague. *Id.*. "[O]therwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity," *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th Cir. 2010) (citation omitted), and vagueness challenges will be rejected when it is "clear what the ordinance as a whole prohibits[,]" *id.* (citation omitted).

None of the language that Grassroot raises is impermissibly vague when read in context and pursuant to the terms' plain and ordinary meaning. Grassroot asserts that Act 11 is vague because in the Act's definition of "[a]rtificial-person powers[,]" it "exclude[es] any power to *directly or indirectly* engage in election activity or ballot-issue activity." Act 11, § 8 (emphasis added); *see* ECF No. 15-1 at 23–24. There is nothing vague about this language. "'Indirectly' is an easily understood

word in common English usage [and] [i]n the context in which it is used, it is neither vague nor difficult to understand." *Alaska Right to Life Comm. v. Miles*, 441 F.3d 773, 783 (9th Cir. 2006). "[T]he words 'direct and indirect' together describe the complete universe of possible methods[,]" *id.*, of "paying, contributing, or expending money or anything of value" to support or oppose a candidate or ballot question, Act 11, § 8. In other words, they indicate that a corporation cannot skirt the corporate power restriction simply by paying or expending money to support or oppose a candidate or ballot by some method other than a straightforward payment to the candidate or a ballot measure proponent.

Grassroot's objection to the terms "support" and "oppose" fare no better. Those terms are already used in the definition of "advertisement" in Hawaii's existing campaign finance statutes, Haw. Rev. Stat. § 11-302, which Grassroot appears to acknowledge is not vague, *see* ECF No. 15-1 at 23, and which the Ninth Circuit has upheld against a vagueness challenge, *see Yamada*, 786 F.3d at 1192–94 (holding that the terms "advocates," "supports," and "opposition" used in Haw. Rev. Stat. § 11-302, are not unconstitutionally vague).[6] The *Yamada* Court explained that

---

[6] Grassroot also appears to take issue with the term "bona fide," but does not explain why it believes it is vague. ECF No. 15-1 at 24. In any event, the phrase "bona fide" has a plain meaning, "has many applications in the law[,]" and "is generally used [without ambiguity] according to its dictionary definition—that is, meaning '[a]cting or done in good faith; sincere, genuine.'" *Griffin v. Lockhart*, 935 F.2d 926, 929 n.2 (8th Cir. 1991) (quoting *Oxford English Dictionary* (2d ed. 1989)).

several other circuits had reached the same conclusion, including the First Circuit, which held that the terms "promoting," "support" and "opposition" "were not impermissibly vague because they were tied to an 'election-related object'—either 'candidate,' 'nomination or election of any candidate' or 'campaign.'" *Id.* at 1193 (quoting *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 64 (1st Cir. 2011)).

So too here. As in *Yamada* and *McKee*, the terms "support" and "oppose" are "tied to an election related object," *id.* (cleaned up), specifically "a constitutional amendment, county charter amendment, or other ballot question" in the definition of "ballot-issue activity[,]" and "a candidate, political committee, or political party" in the definition of "election activity[,]" Act 11, § 8. "Read as a whole and in context, the . . . definition[s] [are] sufficiently clear to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Yamada*, 786 F.3d at 1193 (citation and quotation marks omitted).

Instead of explaining specifically why any of the highlighted language in Act 11 would cause confusion as to its own conduct, Grassroot raises speculative, hypothetical situations in which it claims Act 11's application would be ambiguous. But nothing in the language Grassroot has challenged would, for example, create doubt as to whether "the Act's reach is limited to television broadcasts or newspaper ads[.]" ECF No. 15-1 at 24. In any event, "'speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a

statute when it is surely valid in the vast majority of its intended applications.'" *Brumsickle*, 624 F.3d at 1021 (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (cleaned up)). Even if Grassroot had identified any real ambiguity—and it has not—its examples are purely hypothetical, do not apply to its own alleged conduct, and cannot support its vagueness challenge.

**B. Grassroot has not shown it is likely to suffer irreparable harm**

Grassroot has not shown that Act 11 will imminently cause it irreparable harm because the Act does not take effect until July 1, 2027. Act 11, § 27. The purpose of a preliminary injunction is to prevent irreparable injury so that the court can render a meaningful decision on the merits. *Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020). Thus, a plaintiff must still "demonstrate that [it] is likely to suffer irreparable harm in the absence of a preliminary injunction,'" *Cuviello*, 944 F.3d at 831 (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1207 (9th Cir. 2009)), "[e]ven where [it] demonstrates a likelihood of success on the merits of a free speech claim." *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1023 (9th Cir. 2016).

"A threat of irreparable harm is sufficiently immediate . . . if the plaintiff 'is likely to suffer irreparable harm before a decision on the merits can be rendered.'" *Id.* at 1023 (quoting *Winter*, 555 U.S. at 22). If, however, "the harm is not 'likely to occur before the district court rules on the merits,' there is no need for preliminary injunctive relief.'" *Colorado v. EPA*, 989 F.3d 874, 884 (10th Cir. 2021) (quoting

*N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017)); *see also Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 74 (1st Cir. 2004). As Act 11 will not govern any conduct by Grassroot for almost ten months, Grassroot cannot show that the threat of irreparable harm is "sufficiently immediate" to warrant the extraordinary relief of a preliminary injunction. *Boardman*, 822 F.3d at 1023.

To the extent the Court believes Grassroot may be harmed once Act 11 goes into effect, Defendants would have no objection to the Court exercising its discretion to ensure that it can rule on the merits of Grassroot's claims before the Act's effective date. While Defendants do not share Grassroot's view that this case involves no factual issues and will likely require no discovery, *see* ECF No. 15 at 2, Defendants do expect that it can likely be resolved on a motion for summary judgment.[7] With almost a year until Act 11 takes effect, the Court could readily set a dispositive motion deadline to ensure that briefing, hearing, and issuance of an order can take place before July 2027.

Given the legislation's delayed effective date, Grassroot's claim that Act 11 presently "prohibits" or at some point "has prohibited" its advocacy rings hollow. ECF No. 15-1 at 28. Perhaps recognizing this, Grassroot claims that Act 11 is

[7] For similar reasons, the Court should deny Grassroot's request to consolidate the preliminary injunction hearing with the trial on the merits under FRCP 65(a)(2).

"already harming [its] fundraising, as well as the plans [it] can make based on that fundraising." *Id.* But because Grassroot provides no information about its finances, it is impossible to say how the reduction or withholding of these donors' donations will affect Grassroot's purportedly expressive conduct. Mr. Monoscalco says he makes "substantial contributions" to Grassroot and that he will make a "lower than planned" donation in December 2026. Monoscalco Decl. ¶¶ 4, 6. Dr. Corboy says he "financially support[s]" Grassroot, and then says both that he will "reduce [his] donations at this point" and that he will "withhold" his next donation during this lawsuit. Corboy Decl. ¶¶ 4, 7. But no declaration specifies the amount of these donors' past or intended future donations, whether their donations are earmarked for any particular purpose, what Grassroot's financial condition is (with or without these donations), nor how Grassroot spends its money. This showing falls drastically short of the kind of "substantial loss of organizational funding" which "harms [the organization's] mission" that could constitute irreparable injury stemming from reduced fundraising. *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020). Absent irreparable harm, Grassroot's motion should be denied.

**C. Grassroot has not satisfied the other preliminary injunction factors**

When the government is a defendant, the third and fourth preliminary injunction factors merge. *Baird*, 81 F.4th at 1040 (citations omitted). Grassroot seeks to enjoin Act 11, but "[a]ny time a State is enjoined by a court from effectuating

statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (alteration and citation omitted). Particularly so here, where the fact that "any harm posed to [Grassroot] is speculative tips the balance firmly in the Government's favor." *Nevada v. United States*, 364 F. Supp.3d 1146, 1157 (D. Nev. 2019).

## IV. CONCLUSION

Defendants respectfully request that the Court deny Grassroot's Motion.

DATED: Honolulu, Hawai‘i, September 11, 2026.

/s/ *Ewan C. Rayner*
KALIKO‘ONĀLANI D. FERNANDES
EWAN C. RAYNER
THOMAS J. HUGHES

Attorneys for Defendants