Owen Yeates (12185)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW
Ste. 801
Washington, DC 20036
808-470-0506
oyeates@ifs.org

*Counsel for Grassroot Institute of Hawaii*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| GRASSROOT INSTITUTE OF HAWAII, a Hawai‘i nonprofit corporation,<br><br>*Plaintiff*,<br><br>*v*.<br><br>ANNE E. LOPEZ, in her official capacity as Hawai‘i Attorney General, and NADINE ANDO, in her official capacity as Director of Hawai‘i Department of Commerce and Consumer Affairs,<br><br>*Defendants*. | Civil Action No. 1:26-cv-00279-LEK-RT<br><br>**PLAINTIFF GRASSROOT INSTITUTE OF HAWAII'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date and time of hearing: October 13, 2026, 2:30 p.m.<br>Presiding Judge: Honorable Leslie E. Kobayashi<br>Trial Date: TBD<br>Relating docket no.: 22 |

## TABLE OF CONTENTS


Table of Authorities ........ iii

Introduction ........ 1

Legal Standard ........ 2

Argument ........ 2

A. Grassroot has standing to challenge Act 11. ........ 2

1. Act 11 prohibits Grassroot's ballot-measure activity. ........ 7

a. Intent to engage ........ 7

b. Arguably proscribed by statute ........ 9

c. Credible threat of prosecution ........ 15

2. Act 11 prohibits Grassroot's legislative and issue advocacy as election activity. ........ 16

3. Grassroot has demonstrated imminent injury. ........ 20

4. Grassroot is injured through the prohibitions on the Action Center. ........ 22

B. Grassroot alleged a First Amendment injury necessary to state a claim ........ 24

1. Act 11 violates Grassroot's First Amendment rights. ........ 24

2. Act 11 violates the right of association, which the state has no authority to control. ........ 26

3. Act 11 is unconstitutionally vague. ........ 27

Conclusion ........ 29

TABLE OF AUTHORITIES

**Cases**

*Alaska Pol'y F. v. Alaska Pub. Offs. Comm'n*,
583 P.3d 701 (Alaska 2026) .......... 14, 18, 28

*Am. Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) .......... 3, 4, 5, 6, 8, 9, 10, 21, 22

*Ariz. All. for Retired Ams. v. Mayes*,
No. 22-16490, 2026 U.S. App. LX 23880
(9th Cir. Aug. 7, 2026) .......... 16, 23

*Ball v. Famiglio*,
726 F.3d 448 (3d Cir. 2013) .......... 24

*Bell v. Keating*,
697 F.3d 445 (7th Cir. 2012) .......... 4, 7, 8, 20, 21

*Buckley v. Valeo*,
424 U.S. 1 (1976) .......... 16, 17, 18, 27, 28

*Burdick v. Takushi,*
937 F.2d 415 (9th Cir. 1991) .......... 4, 20

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) .......... 26

*Chiles v. Salazar*,
607 U.S. 627 (2026) .......... 26

*Citizens United v. FEC*,
558 U.S. 310 (2010) .......... 9, 25

*City & County of S.F. v. Trump*,
897 F.3d 1225 (9th Cir. 2018) .......... 10, 19

*Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*,
680 F.3d 1194 (10th Cir. 2011) ....................25

*Ctr. for Individual Freedom, Inc. v. Tennant*,
706 F.3d 270 (4th Cir. 2013) ....................29

*Daien v. Ysursa*,
711 F. Supp. 2d 1215 (D. Idaho 2010) .................... 5, 6, 8, 9, 20, 21

*Etienne v. Ferguson*,
791 F. Supp. 3d 1226 (W.D. Wash. 2025) ....................3, 4

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....................3

*FEC v. Ted Cruz for Senate*,
596 U.S. 289 (2022)....................24

*FEC v. Wis. Right to Life, Inc.*,
551 U.S. 449 (2007).................... 16, 17, 28, 29

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
146 S. Ct. 1114 (2026)....................26

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)....................27

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995)....................11

*Helvering v. N.Y. Tr. Co.*,
292 U.S. 455 (1934)....................13

*Henderson v. Springfield R-12 Sch. Dist.*,
163 F.4th 478 (8th Cir. 2025) ....................4

*Idaho Coal. United for Bears v. Cenarrusa*,
234 F. Supp. 2d 1159 (D. Idaho 2001) ....................5

*Idaho Coal. United for Bears v. Cenarrusa*,
No. 00-0668-S-BLW, 2001 U.S. Dist. LX 24929
(D. Idaho May 30, 2001) .................................................................. 5, 6, 8, 9

*Initiative & Referendum Inst. v. Walker*,
450 F.3d 1082 (10th Cir. 2006) ........................................................................4

*Johnson v. Yuma Reg'l Med. Ctr.*,
769 F. Supp. 3d 936 (D. Ariz. 2024) ............................................................25

*Krislov v. Rednour*,
226 F.3d 851 (7th Cir. 2000) .........................................................................23

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......................................................................13

*Lopez v. Candaele*,
630 F.3d 775 (9th Cir. 2010) .........................................................................22

*Matsumoto v. Labrador*,
122 F.4th 787 (9th Cir. 2024) ........................................................................15

*Matsumoto v. Labrador*,
701 F. Supp. 3d 1032 (D. Idaho 2023) .............................................................4

*Mau v. City & County of Honolulu*,
807 F. Supp. 3d 1169 (D. Haw. 2025).......................................................2, 24

*McConnell v. FEC*,
540 U.S. 93 (2003).........................................................................................17

*McDonnell v. United States*,
579 U.S. 550 (2016).......................................................................................11

*Meland v. Weber*,
2 F.4th 838 (9th Cir. 2021) ..............................................................................2

*NAACP v. Ala. ex rel. Patterson*,
357 U.S. 449 (1958).......................................................................................26

*Peace Ranch, LLC v. Bonta*,
93 F.4th 482 (9th Cir. 2024) ....................................................................5

*Rio Grande Found. v. Oliver*,
57 F.4th 1147 (10th Cir. 2023) ..................................................................4

*Roberts v. Sea-Land Servs.*,
566 U.S. 93 (2012)....................................................................................13

*Seattle Pac. Univ. v. Ferguson*,
104 F.4th 50 (9th Cir. 2024) .....................................................................5

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014)............................................................................ 3, 4, 15

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ...................................................................3

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022) ...............................................................5, 21

*United States ex rel. Streck v. Eli Lilly & Co.*,
152 F.4th 816 (7th Cir. 2025) ..................................................................13

*United States v. Am. Trucking Ass'ns*,
310 U.S. 534 (1940)..................................................................................13

*United States v. Flores*,
729 F.3d 910 (9th Cir. 2013) ....................................................................11

*United States v. Hansen*,
599 U.S. 762 (2023)..................................................................................20

*Virginia v. Am. Booksellers Ass'n*,
484 U.S. 383 (1988)..................................................................................10

**Statutes**

26 U.S.C. § 501(c)(3)...............................................................................17

Act 11 § 8 ........ 10, 11, 13, 14, 19, 27

Cal. Gov't Code § 82025 ........ 14

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........ 2

Federal Rule of Civil Procedure 12(b)(6) ........ 2, 24, 25

**Other Authorities**

*'Doctor shortage' forums highlight crisis but also potential policy remedies*, Grassroot Inst. of Haw. (Oct. 5, 2022) ........ 18, 19

A. Kam Napier, *Q&A with state Sen. Jarrett Keohokalole on SB2471*, Aloha State Daily (May 7, 2026) ........ 12

Fed. Election Comm'n, *Campaign Guide: Corporations and Labor Organizations* (Jan. 2018) ........ 14

Rev. Rul. 2007-41, 2007-1 C.B. 1421, 2007 IRB LX 495, 2007-25 I.R.B. 1421 (June 18, 2007) ........ 18, 28

Testimony by Tom Moore, Senate Committee on Commerce and Consumer Protection (Feb. 3, 2026) ........ 12, 14

Tom Moore, *The Corporate Power Reset That Makes* Citizens United *Irrelevant*, Ctr. for Am. Progress (Sept. 15, 2025) ........ 12

# PLAINTIFF GRASSROOT INSTITUTE OF HAWAII'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

The Grassroot Institute of Hawaii challenged Act 11 because the law silences the work that it has long carried out, work giving voice to the people of Hawai'i. Grassroot's established record of advocacy relating to ballot measures and legislation, and its intention to continue that work, belie Defendants' claim that Grassroot lacks standing to challenge the law.

Defendants' argument that Grassroot lacks standing fails because Grassroot has a long history of advocacy related to ballot measures and legislation, advocacy that will violate Act 11's prohibitions on ballot-measure and election activity. This history substantiates Grassroot's intent to continue engaging in such activity. Moreover, Defendants cannot argue that the Act does not apply to Grassroot's speech because of the news exemption, as that exemption is a gift that Act 11 gives only to the institutional media. And the argument that the Act cannot apply to Grassroot because Grassroot has not alleged it will spend money also fails, as the Act's prohibition on any expenditure that directly or indirectly supports or opposes candidates or ballot measures would intrinsically apply to the time Grassroot's staff spends preparing its studies and communications.

The argument that Grassroot has no First Amendment rights, and thus fails to state a claim, also fails. Courts have long recognized that corporations have First Amendment rights. Defendants' novel theory that the state is only removing a power before any right can attach is just a façade for unconstitutional prior restraint. And as a novel theory, it cannot overcome Grassroot's invocation of a recognized right, especially under the standard for 12(b)(6) motions.

## Legal Standard

For "a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1)," a court must "construe all material allegations of fact in the complaint in favor of the plaintiff." *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021) (quotation marks omitted). Rule 12(b)(6) requires that a complaint "establish a cognizable legal theory" and that it "allege sufficient facts to support a cognizable legal theory." *Mau v. City & County of Honolulu*, 807 F. Supp. 3d 1169, 1184 (D. Haw. 2025).

## Argument

### A. Grassroot has standing to challenge Act 11.

"To establish standing, … a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the

requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). But "because a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury," a court's inquiry in First Amendment cases "tilt[s] dramatically toward a finding of standing." *Am. Encore v. Fontes*, 152 F.4th 1097, 1113 (9th Cir. 2025) (quotation marks omitted).

Accordingly, self-censorship may sustain standing if "reasonably premised on a credible or substantial risk that the law in question will be enforced against him." *Id*. at 1114. A court examines "whether the plaintiff has shown [1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder." *Id*. (quotation marks omitted); *see Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 159 (2014).

"In past cases, the Ninth Circuit has emphasized that the intent to engage in proscribed conduct must rise above vaguely described 'someday intentions.'" *Etienne v. Ferguson*, 791 F. Supp. 3d 1226, 1240 (W.D. Wash. 2025) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)). In *Thomas*, the court rejected standing where plaintiffs had not said "when, to whom, where, or under what circumstances" they had before engaged or would in the future engage in the proscribed conduct. *Thomas*, 220 F.3d at 1139. But this

language "does not represent an inflexible requirement that all plaintiffs specifically explain when and how they plan to violate a law." *Etienne*, 791 F. Supp. 3d at 1240.

Indeed, the intent to engage requirement could not be so inflexible in examining whether an injury is "imaginary or wholly speculative." *Driehaus*, 573 U.S. at 160 (quotation marks omitted). Pre-enforcement injuries are necessarily "inchoate," *Henderson v. Springfield R-12 Sch. Dist.*, 163 F.4th 478, 492 (8th Cir. 2025) (quotation marks omitted), and their pleading is "more counterfactual than practical," *Am. Encore*, 152 F.4th at 1115 (quotation marks omitted).

Standing therefore does not demand that a plaintiff produce "specific plans or intentions," *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006), or "show the specific content or likely timing of their desired speech," *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1164 (10th Cir. 2023); *see also Burdick v. Takushi,* 937 F.2d 415, 417-18 (9th Cir. 1991) (standing to challenge ban on write-in candidates despite "fail[ure] to identify a particular candidate"); *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012) (standing although plaintiff could not identify protest where he would violate law); *Walker*, 450 F.3d at 1091 (standing despite "no specific plans to pursue a future initiative"); *Matsumoto v. Labrador*, 701 F. Supp. 3d 1032, 1055 (D. Idaho 2023) ("specific details of future

plans are not required"); *Daien v. Ysursa*, 711 F. Supp. 2d 1215, 1224 (D. Idaho 2010) ("standing does not depend on [plaintiff] identifying the specific independent presidential candidate").

And when "a plaintiff has previously engaged in conduct that would violate the challenged law, we have relaxed the requisite level of detail." *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59 (9th Cir. 2024) (citing *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) ("[W]e do not require plaintiffs to specify 'when, to whom, where, or under what circumstances' they plan to violate the law when they have already violated the law in the past.")). Pleading intent and alleging "corroborating past practice" suffices. *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 488 (9th Cir. 2024).

Grassroot can therefore demonstrate its concrete injury by pointing to its past speech and asserting its intention to continue engaging in similar speech. *See Am. Encore*, 152 F.4th at 1114; *Tingley*, 47 F.4th at 1068. The plaintiffs in *Idaho Coal. United for Bears v. Cenarrusa*, 234 F. Supp. 2d 1159 (D. Idaho 2001), for example, went no "further" than to assert an intention "to work on future property tax initiatives if the laws are sufficiently modified to make that possible." *Idaho Coal. United for Bears v. Cenarrusa*, No. 00-0668-S-BLW, 2001 U.S. Dist. LX 24929, at *5 (D. Idaho May 30, 2001). But because the plaintiffs had "organized

initiatives in the past, … their statement of intention to organize future initiatives [was] not 'conjectural'" and they had standing. *Id*. at *3-4, 7.

Indeed, other cases show that the past conduct and the intended conduct need not be the same, as long as the past conduct indicates that the intended conduct may violate the challenged law. The plaintiffs in *American Encore*, for example, did "not state the exact nature of the political speech in which they intend[ed] to engage in the next election," but they showed a variety of past political activity: regularly speaking to voters to support and oppose legislation, training volunteers and poll watchers, and conducting grassroots activity. 152 F.4th at 1114-15. This made clear their "inten[t] to engage in political and election-related speech of whatever nature the times and issues demand." *Id*. at 1115.

Similarly, standing existed to challenge a law about gathering ballot-access signatures in *Daien*, despite "no evidence" that the plaintiff had gathered signatures before and even though he had only asserted intent to gather signatures for an "unknown" candidate. 711 F. Supp. 2d at 1220, 1223. But he was "a historic supporter of independent candidates," *id*. at 1226, and had challenged "impediments to his political activities," *id*. at 1223, "demonstrat[ing] more than a passing fancy about supporting independent presidential candidates," *id*.

And there was standing in *Bell*, despite uncertainty about when the law would apply. The government argued that the claimed injury was too speculative because Bell could not predict when he would be near three or more persons behaving so unreasonably as to breach the peace. *Bell*, 697 F.3d at 452. But Bell had participated in past protests where his conduct would violate the new law, *id*. at 454, and the law's vagueness only "*compound[ed]* his chilling claim," as he would be forced to assume that the law "can and will always be enforced and that total abstention from the protected activity is necessary," *id*. at 455.

1. Act 11 prohibits Grassroot's ballot-measure activity.

*a. Intent to engage*

Grassroot has established a long history of advocacy about ballot measures, legislation, and important public issues in pursuit of its mission, advocacy that will trigger penalties under Act 11. Compl. ¶¶ 8-16; Akina Decl. ¶¶ 5-13.

Grassroot's advocacy regarding certified ballot measures includes communications against the 2008 Honolulu Rail ballot initiative; in 2010, against the Hawaii Tax Rebates Amendment, in favor of the Hawaii Board of Education Amendment, and against a vote to create a semi-autonomous public transit authority in Honolulu; and against a 2018 education tax ballot measure. Compl. ¶ 9. Grassroot opposes a state property tax, which must be passed by referendum,

and has repeatedly—in 2018, 2021, 2022, and 2024—advocated against legislative proposals for such referendums. *Id*. ¶ 10. And it has proposed and advocated for its own ballot measures. *Id*. ¶ 11.

These examples demonstrate that Grassroot advocates about ballot measures, as required by its mission, at every stage of the process: it proposes measures, *id.* ¶ 11; it advocates for or against certification, *id*. ¶¶ 10-11; and, when measures are certified, it fulfills its mission by advocating for or against them, *id*. ¶ 9. Grassroot has met or exceeded the statements of past activity described in the cases above, indicating that it will engage in advocacy "of whatever nature the times and issues demand." *Am. Encore*, 152 F.4th at 1115; *see id*. (regularly spoke to voters about supporting and opposing legislation); *Idaho Coal.*, 2001 U.S. Dist. LX 24929, at *3 ("organized initiatives in the past"); *Daien*, 711 F. Supp. 2d at 1226 ("historic supporter of independent candidates"); *Bell*, 697 F.3d at 454 ("past participation in a protest").

Grassroot has declared its intent to continue supporting measures that further its mission and opposing those that do not. *See* Compl. ¶¶ 10, 44. That includes proposing its own measures and necessarily advocating for them when certified. *Id*. ¶ 44. Meeting or exceeding the allegations sustaining standing in the above cases, Grassroot has even specified topics for some measures: "requiring fiscal notes and

cost of government measures and state constitutional amendments such as reforming expenditure ceilings and balanced budget requirements." *Id.*; *see Idaho Coal.*, 2001 U.S. Dist. LX 24929, at *5 (alleging intent "to work on future property tax initiatives"); *Am. Encore*, 152 F.4th at 1115 (no allegations of "the exact nature of the political speech"); *Daien*, 711 F. Supp. 2d at 1220 ("a yet unknown, independent presidential candidate").

Grassroot has thus "demonstrated more than a passing fancy about" ballot-measure activity, *Daien*, 711 F. Supp. 2d at 1223, even getting "involve[d] in legal challenges," *id*. at 1223, in this case and before, Compl. ¶ 8. And it has made clear its "inten[t] to engage in political and election-related speech of whatever nature the times and issues demand," *Am. Encore*, 152 F.4th at 1115, including advocacy after measures have been certified.

And because corporations have a constitutional right to engage in political speech, *Citizens United v. FEC*, 558 U.S. 310, 342 (2010), Grassroot has met the second part of the requirement, that the intended "course of conduct [be] arguably affected with a constitutional interest," *Am. Encore*, 152 F.4th at 1114.

*b. Arguably proscribed by statute*

Grassroot's challenge also meets the second requirement to demonstrate injury, as its ballot-measure advocacy is "proscribed by a statute." *Id*. Grassroot's

intended advocacy would violate the plain text of Act 11, which prohibits "directly or indirectly engag[ing] in … ballot-issue activity," including "expending money or anything of value to support or oppose a constitutional amendment, county charter amendment, or other ballot question after it has been formally certified." Act 11 § 8. Defendants argue, however, that the examples of Grassroot's past ballot advocacy cannot sustain an intention to engage in conduct proscribed by Act 11 because those examples were "'commentary' via a 'newspaper' or 'blog[.]'" Defs.' Mot. to Dismiss at 9 ("Mot."). Defendants ignore the limited nature of this exception.

For purposes of standing, a plaintiff need only demonstrate that its intended conduct is "arguably … proscribed by [the] statute." *Am. Encore*, 152 F.4th at 1116 (quotation marks omitted). That is, courts "accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation." *Id.*; *see also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988) ("if their interpretation of the statute is correct"); *City & County of S.F. v. Trump*, 897 F.3d 1225, 1236 (9th Cir. 2018) ("if the plaintiffs' interpretation of the statute [was] correct" (quotation marks omitted) (alteration in original)).

In arguing that Grassroot's interpretation of Act 11 is wrong—that the prohibition on ballot-measure activity does not apply to Grassroot—Defendants

fail to note that the exemption to the speech ban for "any bona fide news story, commentary, or editorial" applies only if the communication is "distributed through the facilities of a broadcasting station or of any print, online, or digital newspaper, magazine, blog, or other periodical publication." Act 11 § 8. That is, this exception applies only to the institutional news media, not to entities like Grassroot.

Under "the well-established doctrine of noscitur a sociis," which gives name to "the principle that a word is known by the company it keeps," *United States v. Flores*, 729 F.3d 910, 915 (9th Cir. 2013) (quotation marks omitted), a court "avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to" a law, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995); *see, e.g.*, *McDonnell v. United States*, 579 U.S. 550, 569 (2016) (limiting the word "communication"—which "could in the abstract mean any type of communication"—to public communications of wide dissemination).

Act 11 specifies that the news exemption applies to broadcasting stations, newspapers, and periodicals, i.e., to professional news corporations. Applying the noscitur a sociis doctrine, the exception for blog posts likewise applies only to communications from the institutional media.

And statements from Act 11's outside sponsor,[1] as it explained the scheme to the legislature, demonstrate that the exception is so limited. Act 11's exemption is almost identical to the Center for American Progress's model language. *See* Tom Moore, *The Corporate Power Reset That Makes* Citizens United *Irrelevant*, Ctr. for Am. Progress (Sept. 15, 2025), https://bit.ly/3RJtV2S ("The term does not include any bona fide news story ...."). And testimony by the Center's representative demonstrates the intended limits of the news exemption, stating, "Limited exceptions must be made for *media entities* to allow for normal news reporting and opinion by *news corporations*." Testimony by Tom Moore, Senate Committee on Commerce and Consumer Protection (Feb. 3, 2026), https://bit.ly/495kCQX (emphasis added). Neither Grassroot nor its planned (c)(4) is a "news corporation."

Indeed, interpreting the term "blog" beyond publications by the institutional media would frustrate the very purpose of Act 11 and similar proposals, which is to eliminate the "share of political spending [that] flows through 501(c)(4) organizations and similar entities." *Id*. Thus, "[e]ven putting aside [Defendants']

---

[1] A. Kam Napier, *Q&A with state Sen. Jarrett Keohokalole on SB2471*, Aloha State Daily (May 7, 2026), https://perma.cc/5WXL-93TS (CAP "pitched this to legislators before the session").

interpretation's irreconcilable tension with the text, it leads us to a nonsensical destination inconsistent with the statute's clear purpose." *United States ex rel. Streck v. Eli Lilly & Co.*, 152 F.4th 816, 835 (7th Cir. 2025); *see United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940) ("construe … to give effect to [legislative] intent"); *Roberts v. Sea-Land Servs.*, 566 U.S. 93, 101 (2012) ("read in their context and with a view to their place in the overall statutory scheme" (quotation marks omitted)); *Helvering v. N.Y. Tr. Co.*, 292 U.S. 455, 464 (1934) (not "defeat the object intended to be accomplished"). The exemption does not apply, and Act 11 proscribes Grassroot's advocacy.

Defendants also argue that Grassroot has not shown that Act 11 applies to its advocacy because the Complaint contains "no allegations regarding the expenditure of any money." Mot. at 13. The Act defines ballot-issue and election activity to encompass "paying, contributing, or expending money or anything of value to support or oppose" ballot measures and candidates. Act 11 § 8. Defendants acknowledge the Complaint's allegations that Grassroot receives donations, Mot. at 13, but then assume that the donations dwell in desuetude. The reasonable inference, of course, is that an organization dedicated to the social welfare uses its donations to carry out its mission. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("drawing all reasonable inferences in the plaintiff's

favor"). Grassroot stated that it "requests donations to help further its mission," Compl. ¶ 20, that it cannot engage in advocacy because of the Act's spending prohibitions, *id.* ¶¶ 45, 47-48, and that donors will decrease their donations because their money cannot be used for Grassroot's advocacy, *id*. ¶ 49.

Furthermore, a law that purports to prohibit "*any power* to *directly or indirectly* engage in election activity or ballot-issue activity," including "paying, contributing, or expending money or *anything of value*," Act 11 § 8 (emphasis added), certainly covers the staff time required to prepare advocacy. Otherwise it would not succeed in the goal of banning all money except that in the hands of candidates, parties, and PACs. Moore Testimony (eliminate the "share of political spending [that] flows through 501(c)(4) organizations and similar entities").

And even when regimes seek to regulate rather than ban, they still include staff time in their reporting requirements. *See, e.g.*, *Alaska Pol'y F. v. Alaska Pub. Offs. Comm'n*, 583 P.3d 701, 733 (Alaska 2026) (holding that staff time triggered reporting laws); Cal. Gov't Code § 82025 ("expenditure reportable … shall include all costs … including … salaries"); *cf.* Fed. Election Comm'n, *Campaign Guide: Corporations and Labor Organizations* 70 (Jan. 2018), https://perma.cc/VL7N-LRRW (treating "staff time" as contribution). In preparing and disseminating its

communications, Grassroot necessarily uses resources such as staff time, and Act 11 prohibits the expenditure of any resources.

*c. Credible threat of prosecution*

Even if Defendants had argued that there is no "credible threat of prosecution," *Driehaus*, 573 U.S. at 159 (quotation marks omitted), that requirement is also met here. "In challenging a new law whose history of enforcement is negligible or nonexistent, … [such] a failure to *disavow* enforcement is sufficient to establish a credible threat of prosecution in pre-enforcement challenges on First Amendment grounds." *Matsumoto v. Labrador*, 122 F.4th 787, 797 (9th Cir. 2024) (quotation marks omitted) (emphasis in original).

* * *

Grassroot has shown its "intention to engage in a course of conduct arguably affected with a constitutional interest," *Driehaus*, 573 U.S. at 159 (quotation marks omitted), to engage in ballot-issue advocacy. It has shown that this "intended future conduct is 'arguably … proscribed by [the] statute' [it wishes] to challenge." *Id*. at 162 (third alteration added). And it has shown a credible threat of prosecution, thus satisfying the injury-in-fact requirement for standing.

Given that Defendants are tasked with enforcing Act 11, the chill to Grassroot's speech "is an injury 'fairly traceable' to [their] potential enforcement of" Act 11.

*Ariz. All. for Retired Ams. v. Mayes*, No. 22-16490, 2026 U.S. App. LX 23880, at *35 (9th Cir. Aug. 7, 2026). And Grassroot's "injury is also redressable because a preliminary injunction prohibiting [Defendants'] enforcement … [would] alleviate the chill to [Grassroot's] expression." *Id*. at *36. Grassroot therefore has standing to challenge Act 11.

2. Act 11 prohibits Grassroot's legislative and issue advocacy as election activity.

Defendants argue that Grassroot cannot demonstrate injury by Act 11's prohibition on election activity because Grassroot disclaims candidate advocacy. Mot. at 10-11. Because of Act 11's vagueness, however, Defendants may apply its election activity ban to Grassroot's legislative and issue advocacy, chilling Grassroot's speech.

For over 50 years, courts have been refining the boundaries protecting issue speech, limiting the issue speech the government may restrict in the guise of controlling candidate advocacy. *See Buckley v. Valeo*, 424 U.S. 1, 39-44, 76-82 (1976) (per curiam); *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 465-76 (2007) ("*WRTL II*") (Roberts, C.J., controlling op.) (discussing proper test).[2] Because

[2] Unless otherwise noted, all citations to *WRTL II* are to the Chief Justice's controlling opinion.

phrases like "'relative to'" and "for the purpose of … influencing" are so indefinite that they "fail[] to clearly mark the boundary between permissible and impermissible speech," *Buckley*, 424 U.S. at 41, 77, restrictions on independent expenditures were limited to words that "expressly advocate … election or defeat," *id*. at 80. *WRTL II* required a test so objective that the government could not limit speech unless it had "*no reasonable interpretation* other than as an appeal to vote." 551 U.S. at 474 n.7 (emphasis in original). And the Supreme Court in *McConnell v. FEC*, 540 U.S. 93 (2003), upheld the regulations for electioneering communications only because the law was limited to communications that clearly identified a candidate during a short, defined period, and that were published to a specific audience through specific media. *Id*. at 194.

Even though courts for 50 years have refined the language of campaign finance laws to protect issue speech, government officials still push the boundaries. For example, in determining what is issue advocacy and what is campaign intervention under 26 U.S.C. § 501(c)(3), the IRS examines whether a statement identifies a candidate, whether it "expresses approval or disapproval for [a candidate's] positions and/or actions," whether the statement is made "close in time to [the] election," and whether "the issue addressed in the communication has been raised as an issue distinguishing candidates for a given office." Rev. Rul. 2007-41, 2007-

1 C.B. 1421, 2007 IRB LX 495, 2007-25 I.R.B. 1421 (June 18, 2007), https://perma.cc/FY4D-QY4Y; *cf. Alaska Pol'y F.*, 583 P.3d at 719, 723 (noting that knowledge of upcoming elections will "shape the[] understanding" of "most reasonable listeners," and that talking about an issue would be seen as "a 'push'" to "vot[e] against the Initiative").

And the legislature with Act 11 has jettisoned all the protective language and tests developed through *Buckley* and its progeny. Indeed, in adopting a phrase like "directly or indirectly," it has exceeded the ambiguity of anything that *Buckley* warned of in its analysis of phrases like "'relative to'" and "for the purpose of … influencing." 424 U.S. at 41, 77.

Given this ambiguity, and the goal of using laws like Act 11 to keep all money out of politics except that in the hands of candidates, parties, and PACs, Grassroot would like to but cannot afford to continue issue advocacy like it has done before. For example, Grassroot's October 5, 2022 post described a doctor shortage forum at which a panelist identified Representative Ed Case and Senator Brian Schatz (who were both running for reelection) and said they had been "very vocal" in addressing the danger. Compl. ¶ 15; *'Doctor shortage' forums highlight crisis but also potential policy remedies*, Grassroot Inst. of Haw. (Oct. 5, 2022), https://perma.cc/YTM3-3P4T. And it repeated a statement by an audience member,

who declared herself a candidate, discussed her efforts to make the shortage an election issue, and decried Josh Green (who was running for governor) for trying to silence her. *Id*.

This post was published close to the election, clearly identified candidates, and noted that at least one had made the forum issue prominent in her campaign. Indeed, "[i]n educating the public on issues related to its mission, Grassroot communications frequently identify and discuss the actions and positions of elected officials," and Grassroot publishes those communications whenever "salient," which would include when candidates have made the issues prominent in their campaigns. Compl. ¶ 16; *see* Akina Decl. ¶ 13. Given the vagueness of Act 11's prohibition on "directly or indirectly engag[ing] in election activity," Act 11 § 8, Grassroot must silence such legislative and issue advocacy or risk the Act's penalties. At least as far as this litigation and this Attorney General are concerned, Defendants "argu[e] for a narrower reading" of Act 11, but it is "enough that, if [Grassroot's] interpretation of the statute [is] correct, [Grassroot] would face serious repercussions." *City & County of S.F.*, 897 F.3d at 1236 (quotation marks omitted). Thus, for the same reasons that Grassroot has standing with respect to the

prohibition on ballot-issue activity, it has standing with respect to the ban on election activity.[3]

3. Grassroot has demonstrated imminent injury.

Defendants also argue that Grassroot cannot show an imminent injury because it "does not and cannot know what issues will be on the ballot in the future." Mot. at 16. In this they revisit their earlier claims that Grassroot must specify "when, to whom, where, or under what circumstances" it will violate the law. Mot. at 8. For the reasons discussed above, the arguments fail. In particular, the requirement of impending injury does not demand that Grassroot "know what issues will be on the ballot in the future." Mot. at 16. *See Burdick,* 937 F.2d at 417-18 (standing to challenge ban on write-in candidates without requiring name of specific candidate); *Bell*, 697 F.3d at 454 (standing although plaintiff could not identify protest where he would violate law); *Daien*, 711 F. Supp. 2d at 1224-25 (standing without "identifying the specific independent presidential candidate").

---

[3] In a footnote the State argues that Grassroot lacks "standing to challenge the parts of the law that apply only to other types of corporations." Mot. at 14 n.7. But Grassroot raises an "overbreadth" challenge, which allows a party to challenge a law as "facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *United States v. Hansen*, 599 U.S. 762, 769 (2023); *see Bell*, 697 F.3d at 454 n.3 (standing).

The threat of imminent or impending injury does not require immediacy or the certainty that comes with it, just that "a plaintiff's self-censorship must be reasonably premised on a credible or substantial risk that the law in question will be enforced against him." *Am. Encore*, 152 F.4th at 1114. And that credible risk is demonstrated through the three-part *Driehaus* test, *id*., which, as shown above, Grassroot meets.

Furthermore, Grassroot's challenge is not "overly speculative," Mot. at 18, merely because Act 11's prohibitions are not triggered until another event happens—such as a measure's certification. Such a requirement would prevent any electoral challenge, as it would force plaintiffs to wait until just a few months before an election to bring suit—after primaries have passed and measures are certified, which would then allow the government to request dismissal for mootness once the election inevitably passed. Courts do not allow such gamesmanship in the election context. *See Am. Encore*, 152 F.4th at 1115 (not requiring that plaintiffs allege "the exact nature of the political speech"); *Bell*, 697 F.3d at 452, 454-55 (not requiring that plaintiff wait until he was around the required number of people, who were acting in the way that would trigger the law); *Daien*, 711 F. Supp. 2d at 1220 (not requiring plaintiff to wait for a "yet unknown, independent presidential candidate"); *cf. Tingley*, 47 F.4th at 1068 (need not wait

until plaintiff knew specific clients, with specific needs, to challenge treatment ban, even though he could not "control when clients will come to him for help"). As did the plaintiffs in these cases, Grassroot has expressed intent to act in conformity with specific instances of past conduct that would violate Act 11, such that Grassroot's "self-censorship" is "reasonably premised on a credible or substantial risk that the law in question will be enforced against" it. *Am. Encore*, 152 F.4th at 1114.

Defendants' examples are not to the contrary. The two cases discussed in *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010), for example, show only that a plaintiff *may* demonstrate standing by giving specific instances of future conduct. And the language Defendants emphasize, about "imminent" and "*certainly* impending" injury, Mot. at 19, has been treated as equivalent to "a credible or substantial risk that the law in question will be enforced against" a plaintiff, which is analyzed through the *Driehaus* test discussed above. *Am. Encore*, 152 F.4th at 1114.

4. Grassroot is injured through the prohibitions on the Action Center.

Grassroot also has standing because of the harms inflicted on it through the prohibitions on the Action Center. Grassroot decided to form the Grassroot Action Center to amplify the "organization's ability to influence public policy and engage

in robust lobbying," by "serv[ing] as the primary vehicle for issue advocacy, legislative engagement, and grassroots mobilization." Compl. ¶ 18. It would do so by engaging in the same kinds of ballot-measure and legislative advocacy as Grassroot, thus similarly violating Act 11's prohibitions on ballot-measure and election activity. *Id*. ¶¶ 18-19, 46. The intended purposes of the Action Center are thus thwarted, such that it makes no sense to activate and fund the Center just to have it dissolved under Act 11's punishments. *Id*. ¶ 50.

And the prohibitions on the Action Center directly harm Grassroot, by "directly affect[ing] and interfer[ing] with [Grassroot's] core … activities." *Ariz. All.*, 2026 U.S. App. LX 23880, at *17 (quotation marks omitted). In frustrating what Grassroot hoped would be the "primary vehicle for [its] issue advocacy, legislative engagement, and grassroots mobilization," Compl. ¶ 18, Act 11 has inflicted an "injury that affects [Grassroot's] core activities [in a way that] is direct—both concrete and particularized—because it results in a real harm that is specific to" Grassroot. *Ariz. All.*, 2026 U.S. App. LX 23880, at *18. In limiting the Action Center, Act 11 has "limit[ed] the size of the audience [Grassroot may] reach and reduc[ed] the quantum of speech about [Grassroot's] political views that otherwise could be generated." *Krislov v. Rednour*, 226 F.3d 851, 857 (7th Cir. 2000).

Defendants argue that there can be no injury, however, because the Action Center has not yet been created. That is the essence of the injury, however. And Defendants cannot argue that this injury does not support standing because it is supposedly self-inflicted. The Supreme Court has "made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 297 (2022).

B. Grassroot alleged a First Amendment injury necessary to state a claim.

1. Act 11 violates Grassroot's First Amendment rights.

Defendants' 12(b)(6) motion fails because Grassroot's complaint rests on an established right. Rule 12(b)(6) requires that a complaint "establish a cognizable legal theory" and that it "allege sufficient facts to support a cognizable legal theory." *Mau*, 807 F. Supp. 3d at 1184. Caselaw generally focuses on the factual allegations necessary to support the legal theory rather than on what is necessary to establish that the theory is cognizable. Courts have examined, however, whether a claim is "based on an indisputably meritless legal theory," *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); it "simply affords no relief," *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202

(10th Cir. 2011); or it shows "more than a sheer possibility that a defendant has acted unlawfully," *Johnson v. Yuma Reg'l Med. Ctr.*, 769 F. Supp. 3d 936, 946 (D. Ariz. 2024) (quotation marks omitted).

Regardless of the standard, Grassroot relies on a cognizable legal theory. The Supreme Court has long "recognized that First Amendment protection extends to corporations," *Citizens United*, 558 U.S. at 342 (compiling cases), and that "political speech does not lose First Amendment protection simply because its source is a corporation," *id*. (quotation marks omitted).

Defendants nonetheless argue that Grassroot has failed to state a claim because "Act 11 does not regulate Grassroot's First Amendment rights at all." Mot. at 22. Defendants present a novel legal theory, however, and a novel theory is not sufficient to undermine a recognized legal claim under Rule 12(b)(6).

And Defendants' theory is a distinction without a difference. It relies on the idea that there is no constitutional violation in taking away the power to speak, because the right to speak cannot exist unless the state first gives a corporation the power to speak at all. There is a name for the assertion that someone's speech is forbidden until the government permits them to speak: Act 11 "function[s] as … [a] prior restraint." *Citizens United*, 558 U.S. at 335. Claiming that the state is not prohibiting speech but merely taking away the power to speak is merely a "word

game," and First Amendment protections "cannot be renamed away or their protections nullified by mere labels." *Chiles v. Salazar*, 607 U.S. 627, 645 (2026) (quotation marks omitted).

Furthermore, Defendants' theory relies on a mistaken view of corporations, which fails to acknowledge that the First Amendment extends to corporations in part to protect their members' and supporters' rights. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706-07 (2014) ("the purpose [of extending rights to corporations] is to protect the [underlying] rights of" owners and employees); *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1122 (2026) (the First Amendment protects individuals' rights to unite in sharing their views to guarantee the rights of assembly and petition); *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958) (a corporation may "assert these rights, because it … is but the medium through which its individual members seek to make more effective the expression of their own views"). Act 11 cannot "nullif[y]" a First Amendment "right at the very moment of its assertion," much less before. *NAACP*, 357 U.S. at 459.

2. Act 11 violates the right of association, which the state has no authority to control.

Defendants also fail to explain how their theory could apply to the freedom of association claimed in Count Two of Grassroot's complaint. Even if it were true

that corporations are creatures created by the state, beholden to it for all their rights and powers, that gives the state no authority to restrict individuals' rights to associate through corporations.

3. Act 11 is unconstitutionally vague.

Defendants' arguments also fail to ameliorate the unconstitutional vagueness claimed in Count Five. The due process protections of the Fifth and Fourteenth Amendments prohibit "[v]ague laws [that] trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). But the First Amendment requires "an even greater degree of specificity." *Buckley*, 424 U.S. at 77 (quotation marks omitted). And with regard to political speech, it forbids laws that "fail[] to clearly mark the boundary between permissible and impermissible speech," *id.* at 41, between issue speech and advocacy about candidates and ballot measures.

Vague phrases in Act 11, like "directly or indirectly," "support," "oppose," and "bona fide," fail to warn speakers about what activity will trigger Act 11's penalties. The phrases "directly or indirectly" and "support or oppose," Act 11 § 8—especially combined through the definitions for "artificial-person powers," "ballot-issue activity," and "election activity," *id.*—exceed the ambiguity that *Buckley* declared unconstitutional in phrases like "'relative to'" and "for the

purpose of … influencing." *Buckley*, 424 U.S. at 41, 77. As discussed above, no speaker can know whether the state may consider speech about a given issue as advocacy for or against a ballot measure or candidate. *See, e.g.*, *Alaska Pol'y F.*, 583 P.3d at 723 (treating video about ranked choice voting as express advocacy because voters would understand it to be about a ballot measure); Rev. Rul. 2007-41 (stating that whether "an issue distinguish[es] candidates for a given office" is a "key factor[]" in deciding whether issue speech is candidate advocacy).

And the authority Defendants cite for the proposition that "bona fide" is not vague only undermines their argument. Defined as "'[a]cting or done in good faith; sincere, genuine,'" Mot. at 24, the phrase "bona fide" invokes an intent-and-effect test for determining whether speech is prohibited or not. But the Supreme Court has repeatedly held that examining intent—such as whether a speaker is sincerely speaking about an issue or about a candidate—is unconstitutional. "An intent-based standard 'blankets with uncertainty whatever may be said,' and 'offers no security for free discussion.'" *WRTL II*, 551 U.S. at 468 (quoting *Buckley*, 424 U.S. at 43). Accordingly, "[n]o reasonable speaker would choose to [spend money on a

communication under Act 11] if its only defense … would be that its motives were pure." *Id*.[4]

## CONCLUSION

The Court should deny Defendants' motion to dismiss.

Respectfully submitted this 11th day of September, 2026.

*/s/ Owen Yeates*
Owen Yeates (12185)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Ste. 801
Washington, DC 20036
Local mailing address:
P.O. Box 31
55-510 Kamehameha Hwy Ste. 20
Laie, HI 96762
oyeates@ifs.org
Telephone: 808-470-0506

*Counsel for Plaintiff*

[4] The opinion in *Ctr. for Individual Freedom, Inc. v. Tennant*, 706 F.3d 270 (4th Cir. 2013), likewise fails to support the state's argument. The court there did not reject the argument that an exemption for "bona fide news account[s]" was unconstitutionally vague. *Id*. at 288-89. It held only that the plaintiff lacked standing to challenge the exemption. *Id*. at 289.